399 A.2d 728

**In the Interest of Richard SCHIRNER, a minor.**

**Appeal of Richard SCHIRNER, a minor.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1978.

Decided March 9, 1979.

H. John Witman, III, Erwinna, for appellant.

Kenneth G. Biehn, District Attorney, Doylestown, for Com., appellee.

Before CERCONE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant, a juvenile adjudicated delinquent below, contends that the court below erred in failing to suppress inculpatory extrajudicial statements obtained from him during his unlawful detention at the Bristol Township police station.[1] We agree, and accordingly reverse the adjudication of delinquency and remand for a new hearing.

The facts are as follows. On April 2, 1978, at 10:30 a. m., William Melbourne and appellant Richard Schirner were arrested while in flight from the scene of an attempted burglary. They were taken to the Bristol Township police station at 11:00 a. m., and were each placed in detention cells. The police notified their parents, who arrived at the station at noon.

After questioning Melbourne, Detective Edward Ward, the Juvenile Officer of the Bristol Township police, began to question Schirner at 1:30 p. m. in the presence of his mother, after warning him of his *Miranda* rights. Schirner admitted that he was at the scene of one prior unsolved burglary but maintained that he was simply an innocent bystander. Schirner was returned to his cell at 3:00 p. m. At that point, Ward resumed questioning of Melbourne. Melbourne then admitted to numerous burglaries on which the police had open files, and implicated Schirner along with two other juveniles named Michael White (*see* note 1 *supra*) and John Jones.

At 5:30 p. m., an officer telephoned Michael White at his home, and spoke to his father, who agreed to bring his son to the station for questioning. The Whites arrived at 5:30 p.

1. This case should be read in conjunction with *In Interest of White*, 238 Pa.Super. 1979, 399 A.2d 731 (1979).

m., and Detective Ward gave Michael his *Miranda* rights and questioned him in the presence of his father. Michael White orally admitted to his participation in numerous burglaries with Schirner, Melbourne, and Jones. Ward finished questioning Michael White at 7:00 p. m. and placed him in his own detention cell. No one questioned White further that day.

Officer John Schwab arrived at the station at 7:30 p. m. in response to a call from Detective Ward for help in interviewing the juveniles in custody. At 8:00 p. m., he brought Schirner out of his cell and questioned him until 10:00 p. m., during which time (with his mother no longer present) Schirner admitted to his participation in many burglaries with the others. At 10:00 p. m., all three juveniles were informed that they would stay overnight in their cells. The next morning, the juveniles' confessions were transcribed into written statements and signed. The juveniles were then given lunch and taken to the Bucks County Youth Center early in the afternoon.

The Juvenile Act, 11 P.S. § 50–101 et seq., provides a specific procedure to be followed when a juvenile is taken into custody. First, the officer must with all reasonable speed notify the parents of the child's apprehension and whereabouts, and then must do one of two things: (1) release the juvenile to his parents, or (2) if his detention is required to protect the person or property of others, detain the child at an appropriate place which is licensed or approved by the court or the Department of Public Welfare for the detention of delinquents. 11 P.S. §§ 50–309 to 311. For the purpose of determining which of these options to follow, the Act permits the "temporary detention or questioning" of the juvenile. 11 P.S. § 50–310(a)(3). Any extrajudicial statements taken from the juvenile during the course of a violation of these procedures may not be used against him. 11 P.S. § 50–318(b).

In *In Interest of Anderson*, 227 Pa.Super. 439, 313 A.2d 260 (1973), the juvenile was taken into custody at 9:00 p. m. and questioned about his participation in a gang shooting of

a passerby. After he confessed to his participation in the shooting, he was taken to a juvenile detention center around 11:30 p. m. We held that Section 310(a)(3) does not forbid custodial interrogations of juveniles and found that a 2½ hour delay prior to detention in a juvenile center was permissible under the "all reasonable speed" standard of the Juvenile Act. On the other hand, in *Commonwealth v. Bey*, 249 Pa.Super. 185, 375 A.2d 1304 (1977), the juvenile was arrested at 10:00 p. m. and taken to the local police station. The police did not question him but they did place him in a lineup four hours later at 2:00 a. m., at which time the complainant positively identified him. The juvenile was then transferred to another police station and, in the morning, was taken to the Youth Study Center in Philadelphia. We held that this delay was in violation of the Juvenile Act:

"The [juvenile] . . . upon his arrest . . . was 'in custody' within the meaning of the Juvenile Act. Consequently, before he was taken elsewhere, allowing for a period in which the authorities could administratively process the juvenile suspect, he should have either been released in the custody of his parents . . . or delivered to a detention . . . center . . .. In view of the serious charges [rape] for which [the juvenile] was arrested it would have been quite impractical for the police to have released [him]. However, this does not alter the fact that his lengthy detention at the . . . police districts was not . . . in conformity with the mandatory provisions of [the Juvenile Act, 11 P.S. § 50–310]." *Commonwealth v. Bey, supra*, 249 Pa.Super. at 198, 375 A.2d at 1313. We also held that a police station is *not* an appropriate detention center for juveniles under the requirements of 11 P.S. § 50–311(a). *Id.*, 249 Pa.Super. at 199, 375 A.2d 1312. Therefore, we held that the admission of this pre-trial identification was erroneous.[2]

---

**2.** The Juvenile Act, 11 P.S. § 50–318, provides that "extrajudicial statements . . . shall not be used against [a juvenile]." However, this Section does not specifically address the suppression of pretrial identifications taken during the course of an unlawful delay. Accordingly, in *Bey* we held that since the procedures mandated by

Here, applying the Juvenile Act as construed by *Anderson* and *Bey*, we conclude that it was error to admit Schirner's statements. Schirner did not begin to make his inculpatory statements until he had been in custody for 9½ hours after his arrest. When Schirner was brought into custody, he was not immediately questioned to determine whether he should be released to his parents or detained. Rather, Schirner was placed in a detention cell for 2½ hours, questioned for 1½ hours, during which time he denied any criminal conduct, and then returned to his cell where he stayed for the next five hours. This delay prior to his confession is even greater than the four hours delay in *Bey* between the arrest and the lineup, which was there held to be a violation of the Juvenile Act. Only after this delay did Schirner begin to make the inculpatory statements that were later used against him, and this when his mother was no longer present.[3] We conclude that keeping Schirner in custody for 9½ hours prior to his confession, when he should have been taken to a juvenile detention center "with all reasonable speed," was a

the Juvenile Act were not followed, the Commonwealth would be required to adhere to the Rule of Criminal Procedure, specifically Rule 130, which provides that persons subjected to warrantless arrests must be taken to arraignment without unnecessary delay. Thus we stated in *Bey* that a *Futch* analysis would apply. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), but refused to order a rehearing because the reliability of the victim's in-court identification rendered harmless any error in the admission of the pre-trial line-up identification. *Commonwealth v. Bey*, 249 Pa.Super. 185, 202, 375 A.2d 1304, 1314 (1977). Here, we have no need to resort to a *Futch* analysis, since the Juvenile Act explicitly requires the suppression of statements in these circumstances. Our analysis must be under the Juvenile Act's standard of "with all reasonable speed." Still, the "unnecessary delay" standard of *Futch* and *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974) remains relevant by analogy. *See In Interest of Anderson*, 227 Pa.Super. 439, 441, 313 A.2d 260, 261 (1973).

3. Appellant does not challenge the legality of the resumption of questioning without the continued presence of his mother, and thus we do not discuss that issue. *See Commonwealth v. Barnes*, 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Thomas*, 258 Pa.Super. 332, 392 A.2d 820 (1978).

violation of the Juvenile Act.[4]   As the confession was obtained during the course of a violation of the Act, his statement should have been suppressed.

The adjudication of delinquency is reversed and the case is remanded for a new hearing.

HESTER, J. dissents.

4.  Under a *Futch* analysis, a delay of nine hours is an unnecessary delay.  *Commonwealth v. Morton,* 475 Pa. 374, 380 A.2d 769 (1977). *See also Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977).