420 A.2d 582

**COMMONWEALTH of Pennsylvania**

v.

**John BRILEY, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1980.

Filed June 6, 1980.

364

James A. Burgess, Jr., Philadelphia, for appellant.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, WICKERSHAM, and HOFFMAN, JJ.

SPAETH, Judge:

This is an appeal from an order denying a petition for expungement of an arrest record. The appeal was originally argued before a three–judge panel of this court, but because of the importance of the issues raised and a potential conflict in our cases, reargument before the court en banc was ordered. Having heard reargument, for the reasons stated below we now reverse.

On May 28, 1975, appellant was arrested and charged with aggravated assault upon a police officer, resisting arrest, and failure of a disorderly person to disperse. Appellant was one of a large number of persons involved in a street-corner celebration of the Philadelphia Flyers Ice Hockey Team's victory in the Stanley Cup Finals. Police were concerned that the crowd was becoming unruly, and posed a threat to passersby; they therefore took steps to disperse it. In the subsequent pushing and shoving, appellant was allegedly involved in an altercation with police, who arrested him. At a preliminary hearing, the district justice found a *prima facie* case, and ordered appellant bound over for trial.[1]

1. Appellant's counsel argues that "[i]t should be noted that the District Justice, although he recorded in detail the Police version of this incident, failed completely to note anything in the record other than the fact of cross examination and summation was entirely omitted from that record, thereby depriving this Court or any Court of an opportunity to adequately determine whether, in fact, a prima

Shortly before trial, however, on February 19, 1976, the lower court entered an order admitting appellant into the Accelerated Rehabilitative Disposition Program (hereafter ARD), *see* Pa.R.Crim.P. 175 *et seq.*, 19 P.S. Appendix, the conditions of admission being that he serve 18 months probation and pay a fine of $200. Appellant complied with these conditions, and on August 2, 1978, filed a petition for expungement of his arrest record. On October 2, 1978, a hearing was held,[2] following which the lower court denied the petition.[3]

In *Commonwealth v. Malone*, 244 Pa.Super. 62, 366 A.2d 584 (1976), this court recognized, in an opinion by Judge HOFFMAN, that in certain circumstances substantive due process guarantees an individual the right to have his arrest record expunged. This right arises from the serious harm an individual may suffer from the Commonwealth's retention of his arrest record:

"Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records

facie case had been made out." Appellant's Brief at 3. We place no weight on this argument but shall take it that a *prima facie* case was made out. If it was not, counsel could have taken appropriate steps to have appellant discharged.

2. This hearing, it appears, was limited to legal arguments of counsel, which were not transcribed.

3. The lower court did dismiss the charges against appellant pursuant to Pa.R.Crim.P. 185, and the propriety of the court's action in this regard is not challenged on this appeal.

have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender."

Id., 244 Pa.Super. at 68–69, 366 A.2d at 587–88, *quoting* Menard v. Mitchell, 139 U.S.App.D.C. 113, 117, 430 F.2d 486, 490–91 (1970).

Accord: *Commonwealth v. Rose*, 263 Pa.Super. 349, 397 A.2d 1243 (1979); *Wert v. Jennings*, 249 Pa.Super. 467, 378 A.2d 390 (1977). *See also* Gough, The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status, 1966 Wash.U.L.Q. 147, 150–62 (describing at length the kinds of prejudice a person with a criminal record may suffer). The fact that an individual may suffer serious harm from the Commonwealth's retention of his arrest record does not by itself give the individual the right to have his arrest record expunged; it must also appear that the harm is so unwarranted that the interests of justice compel the court to order expungement of the record. Whether in a particular case justice does compel expungement is determined by balancing the individual's interest in the expungement of his arrest record against the Commonwealth's interest in retaining the record. This balancing, in turn, involves consideration of such factors as the strength of the Commonwealth's evidence of the individual's guilt, the Commonwealth's reasons for wishing to retain the arrest record, the type and seriousness of the offense, the individual's age at the time of the arrest, his employment history, whether he has any other criminal record, whether he has a history of drug or alcohol abuse, his stability in the community, the length of time that has elapsed between the arrest and the petition to expunge, and the adverse consequences the petitioner may suffer should expungement be denied. *Commonwealth v. Iacino*, 270 Pa.Super. 350, 411 A.2d 754 (1979) (concurring opinion by SPAETH, J., joined by CERCONE, P. J.).

Past cases have presented this court with a variety of factual situations in which the interests of the individual and the Commonwealth had to be balanced. In *Commonwealth v. Malone, supra,* we held that due process required the Commonwealth to present compelling evidence justifying the retention of the arrest record when, because of the Commonwealth's failure to make out a *prima facie* case, the accused had been discharged at his preliminary hearing. We believed that given such demonstrated insubstantiality of the Commonwealth's evidence of the accused's guilt, this heavy burden of proof upon the Commonwealth was required. Similarly, in *Wert v. Jennings, supra,* we held that due process required the Commonwealth to present compelling evidence justifying the retention of the arrest record of an osteopathic surgeon who had been indicted by a grand jury for perjury and conspiracy but who was never tried because the indictments were subsequently *nol pros'd* upon the district attorney's confession that he would be unable to establish a *prima facie* case at trial. Again, in *Commonwealth v. Iacino, supra,* we affirmed an order directing the expungement of the arrest record of an accused who had been indicted for conspiracy and narcotics offenses but who was never tried because the district attorney *nol pros'd* the indictments. Finally, in *Commonwealth v. Rose, supra,* we ordered the expungement of the arrest record of an individual who had been acquitted of retail theft because the Commonwealth failed to establish her guilt at trial before a district magistrate.

In counterpoise with the above cases, where a heavy burden was placed on the Commonwealth, is *Commonwealth v. Mueller,* 258 Pa.Super. 219, 392 A.2d 763 (1978). In *Mueller,* the Commonwealth had made out a *prima facie* case of an accused's guilt at his preliminary hearing but was later precluded from trying the accused because he secured his discharge under Pa.R.Crim.P. 1100, 19 P.S. Appendix. In an opinion by Judge (now President Judge) CERCONE, this court held that in such circumstances the accused does not have a constitutional right to the expungement of his arrest

record unless he affirmatively establishes his non–culpability. The reason this burden was placed upon the accused was the perception that the individual's interest in having his arrest record expunged is far outweighed by the Commonwealth's interest in retaining the arrest record of a person whom it believed should have been prosecuted and convicted, whose guilt was indicated by evidence produced at the preliminary hearing, and who was not tried only because of his reliance upon a technical rule that in no way bore upon his guilt or innocence of the charges against him.

The present case differs materially from *Mueller.* Although the Commonwealth established a *prima facie* case at appellant's preliminary hearing, its prosecution was not involuntarily terminated because of appellant's actions. Rather, appellant was not tried because the District Attorney of Montgomery County, in the exercise of his discretion under Pa.R.Crim.P. 176, believed that appellant was a good candidate for placement in the ARD program and accordingly moved the lower court for appellant's admission into the program. For this reason, the present case is closer to *Rose, Wert,* and *Iacino* than to *Mueller.* True, in *Rose* the accused had been acquitted; the Commonwealth's judgment here that appellant should be placed in the ARD program is not equivalent to a jury's acquittal. In practical effect, however, it is not much different, for upon appellant's successful completion of the program, the Commonwealth was forever barred from convicting him on the charges lodged. Moreover, the fact that in *Rose* the Commonwealth was unable to prove the accused's guilt, and in *Wert* expressed lack of confidence in its ability to prove the accused's guilt, whereas here there is no affirmative evidence that the Commonwealth would have failed in its proof had appellant been tried, strengthens appellant's contention that justice compels the expungement of his arrest record. In *Rose* and *Wert,* though the Commonwealth failed in its proof, at least by its prosecution it demonstrated its belief that the defendants were guilty and deserving of conviction, and its prosecution of them lent credence to the assertion that a need existed to

retain the defendants' arrest records for future use. Here, by moving the lower court for appellant's admission into the ARD program, the Commonwealth demonstrated its belief that the nature of appellant's offense and his background and character were such that the interests of society would be best served were he not prosecuted, but diverted out of the criminal justice system as quickly as possible.

Thus, when this case is placed in the context of our earlier decisions, it is apparent that the Commonwealth has the burden of justifying the retention of appellant's arrest record. Perhaps the burden is not as heavy as in *Malone*, but it is almost as heavy. With this conclusion reached, it is in order to consider the respective strengths of appellant's interest in the expungement of his arrest record, and the Commonwealth's interest in its retention.

Appellant has a strong case for expungement. Almost five years have passed since the incident resulting in his arrest, and he has not been involved in further criminal activity. Appellant has no prior criminal record of any kind. His arrest was in conjunction with a streetcorner celebration of a sports victory, where spirits naturally ran high, and some degree of tension between police and those celebrating was inevitable. Appellant's conduct was not the kind of premeditated or calculated offense that indicates that he is likely to commit another offense, and there is no evidence that appellant's conduct caused serious harm. Indeed, at the preliminary hearing there was no testimony that appellant struck anybody, only that he "began swinging" at a police officer after he was poked several times with a nightstick and told to move from the sidewalk.

In contrast, the Commonwealth's interest in retaining appellant's arrest record is relatively weak. The only reason offered by the Commonwealth for retention of the record is as follows:

> The ARD Program is for first offenders only. If the defendant's record was expunged, the District Attorney's Office would be unable to determine whether the defendant had once previously had an opportunity to participate

in the ARD Program. If the record were expunged, and the defendant subsequently commits another offense, he would be eligible for a second ARD disposition. Such a result would directly contravene the intent behind the ARD Program.

Commonwealth's Brief at 7.

This reason is not persuasive. ARD may easily be limited to first offenders only, without retention of arrest records. In Philadelphia, for example, it is required that "[a] monthly updated confidential list of completed expungements ... shall be maintained by the Court." Rule 442(B)(5), Philadelphia Criminal Rules.[4] It might be said in almost every case that the Commonwealth has some interest in preserving for the purpose of criminal investigation the records of those who have been arrested, on the assumption that such persons bear watching as persons who may commit future offenses. However, not much weight can be assigned to this interest in a case such as the present case, where the Commonwealth, before moving for appellant's admission into ARD, most certainly considered the likelihood that appellant will not recidivate.[5]

Other factors may be mentioned, which tip the balance still further in favor of expunging appellant's arrest record.

The substantial prejudice that may be suffered by one with an arrest record has been noted. At least one study has predicted "that 50 per cent of American males will acquire a nontraffic arrest record at some point in their lives, and the probability for a black urban male may be as high as 90 per cent." Coffee, The Future of Sentencing Reform: Emerging Legal Issues in the Individualization of Justice, 73 Mich.L.Rev. 1362, 1378–79 (1975) (footnotes omit-

4. It may be added that the rules also require notice to the defendant that the expungement procedure provided by the rules "will be allowed only once in a person's life." Rule 442(B)(4)(e), Philadelphia Criminal Rules.

5. *See* A. Specter, Diversion of Persons from the Criminal Process to Treatment Alternatives, 44 Pa.Bar Q. 691, 693 (1973), for statistics indicating that participants in the ARD Program are substantially less likely to recidivate than convicted offenders.

ted). It is reasonable to assume that a high proportion of these persons will be young at the time of their arrests, will not be arrested for serious crimes, and will not repeat their offensive conduct. One must therefore ask whether retention of the arrest record of a once—only minor offender serves any purpose of such importance as will offset the undesirable impact the record may have on the offender's endeavors to live a constructive, law—abiding life. The account in Gough, *supra* at 156–57, illustrates the needless punishment that may be inflicted because of an otherwise law—abiding person's single legal transgression; the facts, it will be observed, resemble those of the present case:

A few years ago, a young man of twenty—one celebrated his college's basketball victory with more enthusiasm than good sense, and with two cohorts—all in a happy state of bibulosity—broke into the rear service porch of a vacant apartment, from which he abstracted a large metal garbage can. When the police arrived shortly thereafter, he was busily engaged in rolling it up and down the rear stairs of the apartment, to the vast annoyance of the building's occupants. His comments to the police were not of the politest sort. He was arrested on charges of burglary, malicious mischief, disturbance of the peace, public intoxication, and contributing to the delinquency of minors (his companions were below the age of twenty—one.) The burglary charge was dropped; he pleaded guilty to the other counts, and was granted probation conditioned upon replacement of the battered garbage can and suitable apologies to its owners. His probation was satisfactorily completed; he graduated from college, went on to a large law school, and graduated with honors near the head of his class. Save for this casual and unfortunate incident, his record is otherwise without blemish. Would it really make sense to require that for the rest of his life he be foreclosed from the practice of his profession? The labels of "malicious mischief," "disturbance of the peace," "drunk in public," and "contributing to the delinquency of a minor" (this last particularly opprobrious

and connotative of moral turpitude) are surely not properly descriptive of his offense, or of his moral character. Yet, he must bear them the rest of his life, listing them on credit and job applications, and otherwise having them dredged up in a host of ways.

Should such persons—and no one can estimate successfully how many there may be—be forced to bear forever the stain of their immature and impulsive conduct? To take a few examples: someone in the shoes of this young man, if he were a barber, would likely lose his license in Michigan or California. Apparently, he could not work as a physical therapist or practice optometry or chiropractic in Minnesota. He could be denied a license to breed or raise horses or to process or sell horsemeat in Illinois, and might lose his cosmetologist's license in Wisconsin.

(Footnotes omitted.)

The ARD Program was created, in large part, to keep persons such as this high-spirited college student out of the criminal justice system, to rehabilitate those who are generally law-abiding, and to protect them from lasting damage because of an isolated, relatively minor infraction of the law. These purposes would be seriously undermined were we to raise procedural barriers to expungement in ARD cases. Moreover, it is likely that an individual enters the ARD program with the understanding that upon completion he will have earned a clean record.[6] The disappointment of his legitimate expectations may result in a bitterness that will thwart his development of a healthy respect for the law and

---

**6.** The Pennsylvania Rules of Criminal Procedure do not specify that expungement will be granted upon completion of ARD. Rule 185, however, provides that the charges will be dismissed. Furthermore, a sample letter to the victim of the crime under Rule 177 states that ARD offers the possibility of "a clean record" to the defendant. The Commonwealth may mislead defendants if it seems to promise a clean record to them and then opposes expungement. In Philadelphia, successful participants in ARD automatically have their records expunged unless the Commonwealth objects, in which case expungement is not automatic but the defendant is advised that a petition for expungement may be filed. Rule 442, Philadelphia Criminal Rules.

that is contrary to society's best interests. Finally, were we to raise procedural barriers to expungement in ARD cases, participation in ARD would probably become less attractive, and defendants with strong defenses and defendants who face only minor sanctions might well decline to participate; since to have their records expunged they would ultimately have to prove their non–culpability anyway, they might just as well choose trial. Thus the additional purpose of ARD of keeping minor cases out of court would also be undermined.

Having reviewed the record in light of the Commonwealth's and appellant's respective interests, we conclude that the lower court abused its discretion in not ordering expungement.

Reversed and remanded with instructions to the lower court to enter an order expunging the record of appellant's arrest.

PRICE, J., files a dissenting statement.

PRICE, Judge, dissenting:

I suspect that the majority opinion will lend further weight to the old adage that "bad cases make bad law." This appeal represents a bad case in that appellant presents us with a situation which evokes great sympathetic response. Nevertheless, it should not serve as the forerunner of blanket expungement of criminal records, and I greatly fear that it frequently will be used as a vehicle to reach that goal.

The majority has faithfully recorded the case development of this problem in our courts. I would only add to that history the case of *Chase v. King*, 267 Pa.Super. 498, 406 A.2d 1388 (1979), a panel opinion of this court which expresses a view that I share. Because this appellant is an admitted offender and has not met the test of *Chase v. King*, *supra*, I would affirm the order of the Court of Common Pleas of Montgomery County.