436 A.2d 628.

EDWARD M. by his Mother, Ann M., Tyrone S. by his Mother, Eulacie S., Joseph H. by his Guardian, Alexander J. Palamarchuk, Esquire, for themselves and other similarly situated, Appellants,

v.

Joseph F. O'NEILL, Edward G. Rendell, Unknown Police Officers.

In the Interest of Vander CLAYBORNE (a juvenile).

Appeal of COMMONWEALTH.

In the Interest of Ronald FORREST (a juvenile).

Appeal of COMMONWEALTH.

In the Matters of Luke McCULLOUGH, Erick Bradely (sic), Antonio Clark, Vander Clayborne, Ronald Forrest and Samuel Buffert.

Appeal of COMMONWEALTH.

Superior Court of Pennsylvania.

Argued Nov. 16, 1979.

Filed Oct. 16, 1981.

Petition for Allowance of Appeal Denied Jan. 29, 1982.

Alexander J. Palamarchuk, Philadelphia, for Edward M. et al., appellants (at No. 1502).

Nancy Wasser, Assistant District Attorney, Philadelphia, for Commonwealth, appellant (at Nos. 1858, 1859 and 1860), O'Neill, et al., appellees (at No. 1502).

Karl Baker, Assistant Public Defender, Philadelphia, for Clayborne, appellee (at No. 1858), Forrest, appellee (at No. 1859), McCullough, et al., appellees (at No. 1860).

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, MONTGOMERY and HOFFMAN, JJ.

CAVANAUGH, Judge:

The dispute in this case concerns the legality of Philadelphia Police Department Directive 95 which concerns juveniles in police custody and which established procedures for the fingerprinting and photographing of juvenile arrestees over fifteen years of age. On August 21, 1979, the Honorable Paul A. Dandridge, sitting in Juvenile Court, granted motions to expunge all fingerprint and photograph records obtained from juvenile defendants Vander Clayborne and Ronald Forrest pursuant to Directive 95. The Commonwealth's appeals from these orders are captioned and docketed as follows: *In the Interest of Vander Clayborne*, No. 1858 October Term, 1979; *In the Interest of Ronald Forrest*, No. 1859 October Term, 1979. On August 22, 1979, Judge Dandrige entered an Injunctive Order requiring the immediate cessation of the implementation of Directive 95. The Commonwealth's appeal from this order is captioned and docketed as *In the Matters of McCullough, et al.*, No. 1860 October Term, 1979.

We ordered these appeals consolidated with the appeal in the case of *Edward M. et al. v. O'Neill, et al.*, No. 1502 October Term, 1979. In that case the Honorable John J. McDevitt, III, sitting in equity, entered an order refusing to preliminarily enjoin the implementation of Directive 95. All of the orders appealed from have been stayed pending disposition of these appeals.

Directive 95 provides, in pertinent part, as follows:

SUBJECT: JUVENILES IN POLICE CUSTODY

I. POLICY

. . . . .

D. Juveniles 15 years of age and older who are taken into custody for the following offenses will be fingerprinted and photographed in accordance with the procedures outlined in this directive.

1. Murder
2. Retail Theft (only juveniles 16 and 17 years of age)
3. Manslaughter
4. Attempted Murder
5. Aggravated Assault
6. Kidnapping
7. Rape
8. Robbery
9. Burglary
10. Auto Theft
11. Arson of Occupied Premises
12. Involuntary Deviate Sexual Intercourse
13. Perjury
14. Tampering with a Witness
15. Violation of the Uniform Firearms Act
16. All Bench Warrants
17. Escape

. . . . .

IV. FINGERPRINTING AND PHOTOGRAPHING OF JUVENILES

A. All juveniles arrested for the offenses listed in Section I will be fingerprinted and photographed by CCTV

personnel in the division wherein they were arrested prior to release or delivery to the Youth Study Center. Exception: Juveniles arrested for the offenses listed in Section I are to be processed at the Police Detention Unit, when the investigation is conducted in Detective headquarters.

1. Juveniles arrested in divisions without CCTV facilities will be transported to a division with CCTV as directed in Appendix "A". In these cases the juvenile will be investigated in the division of arrest. At the conclusion of the investigation the juvenile will be transported for processing. The juvenile will then be released to his parents at the district where he/she was processed, or delivered to the Youth Study Center. EXAMPLE: Juvenile arrested in 6th District. Investigated at 20th & Pennsylvania. Processed at 24th & Wolf. Released to parents at 24th & Wolf.

B. The assigned Juvenile Aid Division investigator will ensure that the juvenile is properly processed and released and that the necessary reports are properly prepared and distributed.

At the time Directive 95 was implemented there was no express statutory authority permitting the Philadelphia Police Department to fingerprint and photograph juveniles. Thus in both of the appeals before us the authority of the police to initiate such proceedings is challenged. Since the filing of the appeals in the instant case, legislation has been enacted specifically authorizing the fingerprinting and photographing of juveniles. 42 Pa. C.S.A. § 6308(c) provides:

§ 6308. Law enforcement records[66]

\* \* \* \* \* \*

(c) Fingerprints and photographs.—

(1) Law enforcement officers shall have the authority to take or cause to be taken the fingerprints or photographs, or both, of any child 15 years of age and older who is alleged to have committed a delinquent act that, but for the application of this chapter, would constitute a felony

or a violation of Subchapter a of Chapter 61 of Title 18 (relating to uniform firearms act) [67].

(2) Fingerprint and photographic records shall not be disseminated to law enforcement officers or other jurisdictions, the Pennsylvania State Police or the Federal Bureau of Investigation unless so ordered by the court.

(3) Fingerprints and photographic records of children shall be immediately destroyed by all persons and agencies having these records if the child is not adjudicated delinquent for reason of the alleged acts.

---

[66] 42 Pa.C.S.A. § 6308, subsec. (c).

Thus insofar as the juveniles seek to enjoin the police from continuing the practice of fingerprinting and photographing juveniles no live controversy is presented.[1] However, the juveniles claim that these procedures, which are quoted above, violate the Juvenile Act[2] and their constitutional rights. Therefore, although we hold that the cases before us are moot as to the issue of authority to fingerprint and photograph juveniles, as seen below the statute does not render the matters before us entirely moot.

## I

First we will consider the Commonwealth's appeals from the orders of Judge Dandridge.

1. Although all of the crimes listed in Directive 95 for which fingerprints and photographs may be taken are felonies at their highest gradation, not all offenses committed thereunder necessarily rise to the level of a felony. Therefore, the Directive arguably authorizes fingerprinting and photographing of juveniles where the child is arrested for the commission of a misdemeanor or summary offense in the adult context. Because the juveniles challenge the authority of the police to fingerprint and photograph in general and not the authority to fingerprint and photograph depending upon the grade of the offense, we do not address this issue. This question would be better addressed where we have the benefit of argument as to the proper interpretation of § 6308. See also n. 6, *infra*, additionally, we note that the retail theft statute specifically provides for the fingerprinting of juveniles for the purpose of grading the offense as provided therein. 18 Pa. C.S.A. § 3929(g).

2. Juvenile Act, July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 6301 et seq. (formerly 11 P.S. § 50–101 et seq. (Supp. 1976–77)).

## A

The action in the lower court was commenced by the filing of petitions to expunge the fingerprint and photograph records of the appellees. Subsequently appellees filed a Motion to Certify a Class Action and a Motion for Intervention. By order of July 24, 1979, both motions were denied. Thereafter Judge Dandridge granted the petitions to expunge. The following day Judge Dandridge stated in an order that Directive 95 is violative of the purposes of the Juvenile Act and that the Philadelphia Police Department shall immediately cease and desist its practice of fingerprinting and photographing juveniles. In reference to this latter order the Commonwealth argues that the lower court acted in derogation of its judicial responsibility by *sua sponte* entering an injunctive order. We agree that due to procedural irregularities the cease and desist order must be reversed.

■ As noted above Judge Dandridge denied appellees' petition to certify a class action. This denial was proper in view of appellees' failure to comply with the Rules of Civil Procedure governing the commencement of class actions. See Pa. R.C.P. 1701–1716 (effective September 1, 1977). Rule 1703(a) provides that "[a] class action shall be commenced only by the filing of a complaint with the prothonotary." Subpart (b) of Rule 1703 states that "[u]pon the filing of the complaint the action shall be assigned forthwith to a judge who shall be in charge of it for all purposes." Rule 1704 dictates the form of the complaint. Appellees failed to comply with these prerequisites, and simply filed their motion with the judge of their choosing without a complaint. According to the explanatory note to Rule 1703, "if the complaint does not comply with Rule 1704, it will not commence a class action." Further, Rule 1710(e) provides that "[i]f certification is refused or revoked, the action shall continue by or against the named parties alone."

■ Despite these procedural irregularities and *its own denial of class certification* the lower court entered an order

which in effect mandates class-wide relief.[3] The Commonwealth argues that once the lower court denied appellees' motion to certify a class action, he could not thereafter grant any form of class-wide relief.

Appellees maintain, however, that the lower court judge in the context of a proceeding in equity brought by an individual may enjoin all further implementation of the police regulation which has been found to be contrary to law. In support of this appellees cite *Simco Sales v. Township of Lower Merion*, 38 Pa.Cmwlth. 434, 394 A.2d 642 (1978). There an ice cream company brought suit challenging a township ordinance banning "street" sales of ice cream. On appeal Commonwealth Court declared the ordinance unconstitutional as an improper exercise of the police power and permanently enjoined the enforcement of the ordinance. Similarly in *Fantastic Plastic, Inc. v. City of Pittsburgh*, 32 Pa.Cmwlth. 41, 377 A.2d 1051 (1977), in a suit brought by an individual discotheque, an injunction was granted enjoining enforcement of a municipal ordinance banning bottle-clubs. Further, appellees cite *Bell Telephone v. Driscoll*, 343 Pa. 109, 112, 21 A.2d 912, 914 (1941) wherein it was stated:

 We have no doubt about the right of the Court of Common Pleas of Dauphin County in the exercise of its equitable powers to entertain a bill to enjoin an administrative agency of the Commonwealth from exercising powers not conferred on it or unconstitutionally conferred on it. That point has been decided too frequently to be longer in doubt. [citations omitted].

These cases, however, do not give the courts the authority to ignore established procedures. In the instant case an injunction was not sought nor was a hearing conducted prior to the *sua sponte* issuance of the injunctive order. Once class certification was denied, the only matter properly before the court was the expungement of the individual

---

**3.** Despite the sweeping effect of Judge Dandridge's order, no opinion in support of the order was filed in this court. See Pa. R.A.P. 1925(a).

juvenile records. Thus as appellants point out, Judge Dandridge granted relief on an issue which was never properly before him. See *Marks v. Bell Telephone,* 460 Pa. 73, 331 A.2d 424 (1975). In *Marks* an action in equity was brought claiming that the police department practice of recording all telephone calls on police department lines violated the Pennsylvania Anti-Wire Tap Act. The lower court enjoined the city from intercepting and recording only appellant's calls. On appeal it was argued that the court should have enjoined all use of the recording system. The Supreme Court rejected appellant's argument, holding that he was not eligible for class-wide relief where the procedural prerequisites and protections of a class action have not been satisfied. The court further reasoned that, in addition to the procedural irregularities involved, the granting of class-wide relief imposes undue hardships on the defendants. The court stated:

> If the plaintiffs succeeded on the merits and the relief were granted, the defendants would be bound by the broad injunction. However, should the defendants be successful in the litigation, the verdict in their favor would have no res judicata effect upon persons not a party to the suit. [citations omitted]. Thus, the defendants could be subjected to a multitude of suits all based upon the same basic set of facts, all seeking the same broad relief, and all free of any final effect upon new plaintiffs, although potentially binding upon the defendants.

460 Pa. at 82–83, 331 A.2d at 429.

Thus the lower court was in error in issuing an injunction *sua sponte* and we reverse.

## B

Next we address the propriety of Judge Dandridge's orders of August 21, 1979, granting the petitions to expunge the fingerprints and photographs of the individual juveniles. The issue before us is whether expungement is the proper remedy regardless of the possible merit to the petitioners' claim.

The Commonwealth argues that the juvenile petitioners were not legally entitled to the remedy of expungement. In support of this contention the Commonwealth cites *Commonwealth v. Malone*, 244 Pa.Super. 62, 366 A.2d 584 (1976). In that case we held that in certain circumstances due process guarantees an individual the right to have his arrest record expunged. In a subsequent case, *Commonwealth v. Rose*, 263 Pa.Super. 349, 351, 397 A.2d 1243, 1244 (1979), we relied on *Malone* in stating:

The judicial remedy of expunction is an adjunct to the inherent rights of Due Process and is not dependent on express statutory authority. However, expunction is proper only in cases where acquittal is consistent with a finding of real innocence and is not a result of legal technicalities unrelated to questions of guilt or innocence.

Thus where an accused is indicted but never tried because the indictments were *nol prossed* upon the district attorney's confession that he would be unable to establish a prima facie case at trial, due process requires the Commonwealth to present compelling evidence justifying retention of the arrest record. *Wert v. Jennings*, 249 Pa.Super. 467, 378 A.2d 390 (1977), aff'd, 488 Pa. 124, 411 A.2d 218 (1980). *See also Commonwealth v. Iacino*, 270 Pa.Super. 350, 411 A.2d 754 (1979). However, where the record shows that the Commonwealth made out a prima facie case of guilt on the part of the accused, he will then have the burden to affirmatively demonstrate nonculpability, otherwise his petition to expunge will be denied. *Commonwealth v. Mueller*, 258 Pa.Super. 219, 223, 392 A.2d 763, 765 (1978). If nonculpability is established, the court must weigh the Commonwealth's interest in retaining the accused's arrest record against the accused's interest in being free from whatever disabilities the record may create. *Id.*

In *Commonwealth v. Briley*, 278 Pa.Super. 363, 420 A.2d 582 (1980) the remedy of expungement was extended to the petitioners who had successfully completed the Accelerated Rehabilitative Disposition Program (hereafter ARD), *see* Pa.R.Crim.P. 175 et seq., 42 Pa.C.S.A. There we held that

the Commonwealth has the burden of justifying retention of the individual's arrest record.

As noted above, the judicial remedy of expungement is an adjunct to due process and proper where acquittal is consistent with a finding of real innocence. Although ARD cannot be said to be equivalent to a finding of "real innocence", this court relied on the *Malone* and *Rose* line of cases in concluding that ARD program participants may be entitled to expungement. First, while acknowledging that placement in ARD is not a jury's acquittal, we stated that in practical effect the program is not that different in that once the candidate successfully completes the program, the Commonwealth was forever barred from convicting him on the charges lodged. As a second reason for holding that expungement is an available remedy we stated:

> Here, by moving the lower court for appellant's admission into the ARD program, the Commonwealth demonstrated its belief that the nature of appellant's offense and his background and character were such that the interests of society would be best served were he not prosecuted, but diverted out of the criminal justice system as quickly as possible.

278 Pa.Super. 363, 420 A.2d at 586.

■ In the instant case Judge Dandridge ordered the expungement of all photographs and fingerprint records of juvenile appellees, Ronald Forrest and Vander Clayborne. Both appellees had been adjudicated delinquent on the charges for which they had been photographed and fingerprinted prior to the orders of Judge Dandridge. Given this, appellants argue that the juveniles would not have been stigmatized by the retention of these records and are therefore not entitled to expungement. We agree.

As discussed at length above, the judicial remedy of expungement is rarely available. Initially we held that expungement is only proper where the defendant is innocent, not where acquittal is the result of legal technicalities. However, a principled extension of the remedy was found in *Briley* because of the singular nature of the ARD program:

The similarity between the disposition and a jury's acquittal; the stringent qualifications the individual must possess before the Commonwealth will recommend entry into the program; and the Commonwealth's own admission in recommending ARD that diversion out of the criminal justice system will benefit society. In all cases, however, expungement is rooted in the accused's right to due process, as we stated in *Commonwealth v. Malone:*

> Punishment of the innocent is the clearest denial of life, liberty and property without due process of law. To remedy such a situation, an individual must be afforded a hearing to present his claim that he is entitled to an expungement—that is because an innocent individual has a right to be free from unwarranted punishment, a court has the authority to remedy the denial of that right by ordering expungement of the arrest record.

244 Pa.Super. at 69, 366 A.2d at 588. Thus the remedy of expungement is not available to the appellees because they were adjudicated delinquent. Therefore, even if the photographing and fingerprinting of juveniles were found to be violative of the Juvenile Act, expungement would not be proper.

We so hold even though the expungement cases upon which we rely deal solely with adult offenders. The due process interest to be protected is the same with both an adult and a juvenile. Likewise, the societal interest in maintaining records is no less present where the accused is a juvenile. We therefore find no basis to distinguish the due process right to expungement of the culpable juvenile from that of the culpable adult. This conclusion finds support in legislation enacted subsequent to the filing of these appeals.

As noted earlier 42 Pa.C.S.A. § 6308 was amended to provide for the fingerprinting and photographing of juveniles. Section 6308(c)(3) provides:

> Fingerprints and photographic records of children shall be immediately destroyed by all persons and agencies having these records if the child is *not adjudicated delinquent* for reason of the alleged acts. [emphasis added].

Also the Criminal History Record Information Act, 18 Pa.C.S.A. § 9101 et seq. (effective January 1, 1980),[4] now provides:

**§ 9123. Juvenile records.**

(a) Expungement of juvenile records.—Notwithstanding the provisions of section 9105 (relating to other criminal justice information) and except upon cause shown, expungement of records of juvenile delinquency cases wherever kept or retained shall occur after ten days notice to the district attorney, whenever the court upon its motion or upon the motion of a child or the parents or guardian finds:

(1) a complaint is filed which is not substantiated or the petition which is filed as a result of a complaint is dismissed by the court other than as a result of an informal adjustment;

(2) five years have elapsed since the final discharge of the person from commitment, placement, probation or any other disposition and referral and since such final discharge, the person has not been convicted of a felony, misdemeanor or adjudicated delinquent and no proceeding is pending seeking such conviction or adjudication; or

(3) the individual is 21 years of age or older and a court orders the expungement.

18 Pa.C.S.A. § 9123(a). Of course, should they meet the statutory requirements, appellees are free to seek relief under this section.

4. This Act had been in effect from July 1, 1979 until July 16, 1979, at which point it was repealed and given a subsequent effective date. In the adult context § 9122 of the Criminal History Record Information Act, 18 Pa.C.S.A. § 9101 et seq., authorizes expungement in limited circumstances. Subpart (b), which apparently permits expungement despite a finding of guilt, provides that criminal history record information may be expunged when:

(1) An individual who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision; or

(2) An individual who is the subject of the information has been dead for three years.

The orders of Judge Dandridge granting the petitions to expunge of Vander Clayborne and Ronald Forrest are reversed.

## II

We now address the appeal of Edward M. This action was commenced by the filing of a class action complaint in equity and a petition for a preliminary injunction by Edward M., Tyrone S., and Joseph H., on behalf of themselves and all other juveniles similarly situated. Appellants filed their complaint against the Philadelphia District Attorney, Edward G. Rendell, Philadelphia Police Commissioner, Joseph F. O'Neill, and certain unknown members of the Philadelphia Police Department.

A hearing on the petitioner's request for a preliminary hearing was held on May 16, 1979, before Judge McDevitt. On June 1, 1979, Judge McDevitt denied the petition for a preliminary injunction, denied class certification and sustained defendants' preliminary objections. From these determinations the juveniles bring this appeal.

Each of the named plaintiffs was fingerprinted and photographed according to Directive 95. According to testimony at the hearing Edward M. was arrested at approximately 5:00 p. m. on April 8, 1979. He was taken first to the 15th Precinct and then transported to the Police Administration Building where he was fingerprinted and photographed. He was advised that the reason he was taken to the Police Administration Building was that the equipment for photographing and fingerprinting at the 15th Street Precinct was out of order. Edward M. was released to the custody of his mother at approximately 11:25 p. m. that same evening.

Tyrone S. testified that he was taken into custody by police officers on March 25, 1979, and transported to the 9th District where he was photographed and released after approximately one and one-half hours. He testified that he assumed he was being released because it was a mistaken identity, which had happened to him before. On April 3, 1979, Tyrone S. was again taken into custody on a warrant

charging robbery. He was taken to the 9th District where he remained in a room with what he described as "older people" from approximately 2:30 until 8:00 p. m. At approximately 2:30 p. m. he was transported to 1st Police District at 24th and Wolf Streets. At approximately 12:00 a. m. he was photographed and fingerprinted, and finally transported to the Youth Study Center at approximately 2:30 a. m.[5]

Joseph H. was arrested at approximately 1:30 a. m. on March 25, 1979, on the charge of attempted burglary. He was taken to the 35th District where he was fingerprinted and photographed and released at approximately 10:30 a. m. the following morning.

Except for the fact that each of the three juveniles were fingerprinted and photographed, the factual situations of each arrest are quite different. Rule 1702, Pa. R.C.P. sets forth five prerequisites to maintaining a class action. Two such prerequisites are relevant here: There must be questions of law or fact common to the class; and the claims or defenses of the representative parties must be typical of the claims or defenses of the class.

As noted above, appellants' argument that fingerprinting and photographing juveniles is not authorized under Pennsylvania law has been rendered moot by the enactment of 42 Pa. C.S.A. § 1608(c). Moreover, during the hearing before Judge McDevitt counsel for the juveniles expressly abandoned any challenge to the authority to fingerprint or photograph. Counsel limited its challenge to the procedures followed in procuring the fingerprints and photographs.[6] Ap-

---

**5.** Tyrone S. is now an adult.

**6.** During the hearing on the motion for a preliminary injunction the following exchange took place between counsel for the juveniles and the court:

Ms. Defrantz:

. . . . .

We do not object to the practice itself. What we're objecting to is the way it's being done in this county; the fact that defendants have, on their own, initiated this process, and, then, after having

pellants argue that the implementation of Directive 95 results in prolonged detention of juveniles in various police facilities in violation of 42 Pa. C.S.A. §§ 6326 and 6327.

Section 6326 provides:

**(a) General rule.**—A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall:

(1) notify the parent, guardian or other custodian of the apprehension of the child and his whereabouts;

(2) release the child to his parents, guardian, or other custodian upon their promise to bring the child before the court when requested by the court, unless his detention or shelter care is warranted or required under section 6325 (relating to detention of child); or

(3) bring the child before the court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall promptly give written notice, together with a statement of the reason for taking the child into custody, to a parent, guardian, or other custodian and to the court.

Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed by this chapter and other provisions of law.

■ Section 6327 provides that a child alleged to be delinquent may be detained only in facilities listed therein. The section states:

initiated the process, attempted to legitimize it by offering amendments to the Legislature.
We feel that that is—
THE COURT: You had better state that over again.
You say you don't object to the process itself?
MS. DEFRANTZ: WE don't object to fingerprinting and photographing children. We object to the way it is practiced in this county.

> Under no circumstances shall a child be detained in any facility with adults, or where the child is apt to be abused by other children.

Subsection (c) provides:

> It is unlawful for any person in charge of or employed by a jail knowingly to receive for detention or to detain in the jail any person whom he has or should have reason to believe is a child.

Appellants contend that the express mandatory language of Directive 95 makes the violation of these sections of the Juvenile Act inevitable and therefore a class action is appropriate. We disagree. Even if the police activity in the arrests of the juvenile appellants could be said to have violated the Juvenile Act, appellants fall short of establishing that these three instances are representative of the class of juvenile arrestees.

The case of *In re Anderson*, 227 Pa.Super. 439, 313 A.2d 260 (1973), is particularly instructive here. In that case a juvenile was arrested and taken to the police station for "booking" at nine p. m. He was detained at the police station and questioned for two hours, during which time he confessed. At eleven p. m. he was taken to the juvenile detention center. This court held that the two and one-half hour delay between the arrest and the arrival at the detention center was not an unreasonable delay so as to contravene the Juvenile Act.[7] Most significantly we stated:

> A two to two and one-half hour delay might be unreasonable under some circumstances. *These cases normally stand on their own particular facts.* However, in this case, the police had a legitimate reason in detaining the defendant in the station so that the defendant might identify other perpetrators of this crime when they were brought in. [Emphasis added].

227 Pa.Super. at 442, 313 A.2d at 261.

■ In *Commonwealth v. Bey*, 249 Pa.Super. 185, 201, 375 A.2d 1304, 1313 (1977), in determining whether a juvenile

---

7. *In Re Anderson*, supra, was decided under 11 P.S. § 50–310(a) which is now 42 Pa. C.S.A. § 6326.

was detained at a police station for an unreasonable amount of time, we stated:

> The appellant therefore upon his arrest at 10:00 p. m. on June 10, 1974, was in 'custody' within the meaning of the Juvenile Act. Consequently, before he was taken elsewhere, *allowing for a period in which the authorities could administratively process the juvenile suspect,* he should have been released in the custody of his parents, guardian or other custodian or brought before a court or delivered to a detention or shelter care center designated by the court. [Emphasis added].

Thus it is a factual question as to whether the post arrest administrative delay is unduly long so as to violate the Juvenile Act.[8] As Judge McDevitt stated in his memorandum opinion: "A myriad of varying fact situations would necessarily arise from contacts between the police and juveniles in a city of two million persons." We hold that in view of the fact-sensitive nature of the question of Juvenile Act violations the lower court was correct in refusing to grant class certification. Alleged violations of the Act will best be considered on a case by case basis.

Parenthetically we note that Directive 95 does address the problems related to juvenile arrests. The Directive states, inter alia:

> Once a juvenile has been taken into a police facility he/she should not be transferred to another district/unit for investigation except as specified in this directive.
>
> \* \* \* \* \* \*

---

**8.** See also the companion cases of *In re Schirner*, 264 Pa.Super. 185, 399 A.2d 728 (1979) and *In re White*, 264 Pa.Super. 190, 399 A.2d 731 (1979). In *Schirner* this court held that the police violated the Juvenile Act in keeping a juvenile in custody for nine and one-half hours prior to his confession. Failure to take the child to a juvenile center with all reasonable speed resulted in the suppression of his statement. In *White* the juvenile was kept in the police station overnight in violation of the Juvenile Act. However, he confessed within one hour of being taken into custody. It was held that the confession was not obtained in the course of a violation of the Act. (The Juvenile Act provides that any extrajudicial statements obtained in the course of violation thereof shall not be used against the juvenile. 42 Pa.C.S.A. § 6338 (formerly 11 P.S. § 50–318)).

The parents, guardians or other custodian of the juvenile shall immediately be notified by the Operations Room Supervisor that the juvenile has been taken into custody, and of the actual or intended place of detention.

\* \* \* \* \* \*

The Operations Room Supervisor in the district where the juvenile is detained will: Ensure that the juvenile is detained in the district juvenile detention area, separate from any adult prisoner. If the divisional detectives want to question the juvenile ensure that the questioning takes place in the district juvenile facility area and not in the detective division.

We need not address the claims of the juveniles as individuals because any question of injunctive relief as to them is moot. They do not allege that they as individuals are in danger of being subjected to similar police practices in the future. Of course, they are free to avail themselves of the statutory remedies of destruction of their fingerprints and photograph records, 42 Pa.C.S.A. § 6308(c)(3), or expungement of their juvenile records, 18 Pa.C.S.A. § 9123(a).

Order of the lower court in the case of *Edward M. et al. v. O'Neill* is affirmed.

Orders of the lower court in *In the Interest of Clayborne, In the Interest of Forrest* and *In the Matters of McCullough et al.* are reversed.

SPAETH, J., files a concurring and dissenting opinion in which CERCONE, President Judge and HOFFMAN, J., join.

SPAETH, Judge, dissenting:

I agree with the majority that Judge DANDRIDGE should not have issued an injunction *sua sponte.* I also agree with the majority that Judge McDEVITT was correct in refusing to grant class action certification. However, I disagree with the majority's reversal of Judge DANDRIDGE's orders granting the petitions to expunge the fingerprints and photographs of juveniles Vander Clayborne and Ronald Forrest.

As the majority recognizes, "At the time Directive 95 was implemented there was no express statutory authority permitting the Philadelphia Police Department to fingerprint and photograph juveniles." At 630. The statute permitting the police to fingerprint and photograph juveniles, 42 Pa.C. S.A. § 6308(c)(1), was not enacted until February 29, 1980, and was not effective until sixty days thereafter. Clayborne and Forrest were fingerprinted and photographed on March 16, 1979, and April 2, 1979, respectively. Since at that time the police had no express statutory authority to fingerprint and photograph them, we must inquire whether they had any implied statutory authority.

When Clayborne and Forrest were fingerprinted and photographed, the only statute authorizing fingerprinting and photographing of any persons at all was the Act of April 27, 1927, P.L. 414, § 3, as amended, 19 P.S. § 1403, which provided:

> The Pennsylvania State Police, the persons in charge of State penal institutions, the wardens or keepers of jails, prisons, and workhouses within this Commonwealth, and all police officers within the several political subdivisions of this Commonwealth, shall have the authority to take, or cause to be taken, the fingerprints or photographs *of any person in custody, charged with the commission of crime, or who they have reason to believe is a fugitive from justice or a habitual criminal,* except persons charged with a violation of "The Vehicle Code" which is punishable upon conviction in a summary proceeding unless they have reason to believe the person is a fugitive from justice or a habitual criminal; and it shall be the duty of the chiefs of bureaus of all cities within this Commonwealth to furnish daily, to the Pennsylvania State Police, copies of the fingerprints and, if possible, photographs, of all persons arrested within their jurisdiction charged with the commission of felony, or who they have reason to believe are fugitives from justice or habitual criminals, such fingerprints to be taken on forms furnished or approved by the

Pennsylvania State Police. It shall be the duty of the Pennsylvania State Police, immediately upon the receipt of such records, to compare them with those already in their files, and, if they find that any person arrested has a previous criminal record or is a fugitive from justice, forthwith to inform the arresting officer, or the officer having the prisoner in charge, of such fact. (Emphasis added.)

This statute did not impliedly authorize the promulgation of Police Directive 95, and the consequent fingerprinting and photographing of Clayborne and Forrest, because as juveniles Clayborne and Forrest were not "person[s] . . . charged with the commission of crime." Juveniles are not charged with the commission of a "crime" but of a "delinquent act." 42 Pa.C.S.A. § 6302. The Juvenile Act makes clear that an adjudication under its provisions does not constitute a conviction of crime.

The only case related to the issue of fingerprinting juveniles is *Owens-El v. Robinson*, 442 F.Supp. 1368 (W.D.Pa. 1978), where the court held that the Pennsylvania Juvenile Code, Act of Dec. 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–101 *et seq.*, did not prohibit a prison administrator from fingerprinting juveniles upon their admission to prison and sending their fingerprints to federal, state, and local authorities. This case represented no authority for fingerprinting and photographing juveniles *upon arrest.*

Since the police had no express or implied statutory authority to fingerprint and photograph Clayborne and Forrest, the proper remedy was to expunge their fingerprints and photographs. *See e. g., Commonwealth v. Fredericks*, 235 Pa.Super. 78, 93, 340 A.2d 498 (1975) (fingerprints obtained following illegal arrest subject to expunction). *See also Menard v. Saxbe*, 498 F.2d 1017 (D.C.Cir.1974); *Hughes v. Rizzo*, 282 F.Supp. 881 (E.D.Pa.1968).

I should therefore affirm the orders granting appellees' petitions for expungement.