366 A.2d 584

**COMMONWEALTH of Pennsylvania**

v.

**Thomas MALONE, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1976.

Decided Dec. 15, 1976.

———◆———

David B. Disney, McNees, Wallace & Nurick, Harrisburg, for appellant.

Marion E. MacIntyre, Second Asst. Dist. Atty., Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

The instant case raises a question of first impression in Pennsylvania: whether an accused is entitled to a hearing to determine whether he has a right to expungement of his arrest record after the charges are dismissed at the preliminary hearing.

On June 16, 1975, appellant was arrested in Harrisburg, and charged with solicitation to commit involuntary deviate sexual intercourse.[1] At the time of the arrest, the police took appellant's photograph and fingerprints as part of the normal "booking" procedure. On June 23, 1975, the charge against the appellant was dismissed at the preliminary hearing.

Thereafter, appellant filed a petition in the Dauphin County Court of Common Pleas in which he requested that the police record be expunged and that the court order the Harrisburg Chief of Police to request a return of appellant's record from the F.B.I. See 19 P.S. § 1402[2] for police authority to forward police records to other crime fighting agencies. Appellant requested a hearing to present the merits of his claim.

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. §§ 902, 3123(5).

2. Act of April 27, 1927, P.L. 414, § 4; as amended, June 29, 1937, P.L. 2433, § 2; April 28, 1943, P.L. 119, § 2.

On August 20, 1975, the lower court denied the petition without a hearing. In relevant part, the lower court's opinion stated that "[appellant] has asked this Court to order any records made by the Harrisburg Police Department, the Pennsylvania State Police and the Federal Bureau of Investigation to be expunged from their files and destroyed. Unfortunately there is no Pennsylvania authority for such action.

". . . [T]here is not only a lack of statutory authority in Pennsylvania to grant such relief but the legislative intent appears to be to the contrary . . . ." This appeal followed.

Whether the court properly denied appellant relief turns on the resolution of two questions: first, did the court have the authority to order the police to expunge the record; and, second, if the authority exists, under what circumstances is it properly exercised.

Initially, the Commonwealth argues that Pennsylvania courts lack the authority to order expungement. By statute,[3] the Pennsylvania State Police are authorized "to procure and file for record photographs, pictures, descriptions, fingerprints, and such other information as may be pertinent, of all persons who . . . may hereafter be . . . convicted of crime within this Commonwealth . . . ." 19 P.S. § 1401. Further, ". . . it shall be the duty of the chiefs of bureaus of all cities within this Commonwealth to furnish daily, to the Pennsylvania State Police, copies of the fingerprints and, if possible, photographs, of all persons arrested within their jurisdiction charged with the commission of felony, or who they have reason to believe are fugitives from justice . . . ." 19 P.S. § 1403. Finally, § 1406 makes "[n]eglect or refusal of any person mentioned in this act to make the report required herein . . . ." a misdemeanor. The Commonwealth con-

3. Act of April 27, 1927, supra, n. 2.

cludes that "[c]onspicuous by its absence in this statutory language is any reference to judicial authority to order the general destruction of arrest records. Such authority would clearly fly in the face of the affirmative duty imposed on the Pennsylvania State Police by § 1403 and § 1404 to develop and carry on a complete system of criminal identification. We note that this duty is buttressed by § 1406, which makes the destruction of arrest records a criminal offense. These provisions establish, in the least, that the legislature was not contemplating judicial expungement when it enacted laws construing a Pennsylvania criminal identification system."

The lower court relied on the reasoning of an opinion in a similar case in the Dauphin County Court of Common Pleas. In *Durham v. Straub*, No. 338, Misc. Docket 1973, the court held that because The Controlled Substance, Drug, Device and Cosmetic Act [4] provides for expungement of the arrest record if charges are dismissed or the accused is acquitted, the legislature's failure to provide a similar remedy in other instances is evidence of a legislative intent to the contrary. Further, the court cited with approval the analysis in *Commonwealth v. Magaziner*, 50 D. & C.2d 291, 296 (1970) : "The act nowhere directs destruction of that material in cases of acquittal. Thus, local chiefs of police are not required to destroy such records of persons acquitted or whose bills of indictment are dismissed by a grand jury, and we lack power or authority to order them to do so. The positive direction contained in section 5 [5] of the act requiring district attorneys to destroy fingerprints of persons acquit-

4. Act of April 14, 1972, P.L. 233, No. 64, § 1 et seq., as amended; 35 P.S. § 780–101 et seq.

5. Section 1405(c) provides that "[t]he district attorneys of the several counties shall keep and arrange files of the fingerprints, taken under the provisions of this act, of persons convicted of crime and shall destroy the fingerprints of all persons acquitted." Apparently, the statute contemplates two sets of records, those maintained by the police and those kept by the district attorney. Thus, § 1405 has no bearing on the instant case.

ted, together with the complete absence from all other sections of the act of a direction to detectives or police officers to destroy fingerprints or photographs, shows a legislative intent to limit directions to destroy the fingerprints of acquitted persons to those kept by district attorneys and by their chief detectives. 'Expressio unius est exclusio alterius.' "

There is no Pennsylvania appellate court decision directly on point. Appellant does cite three Pennsylvania cases which refer to the problem. Without citing a statutory or constitutional basis for such a proceeding, the Supreme Court stated that one aggrieved by an unjust arrest for contempt could present a motion to expunge his arrest record: "[Appellant] contends that the case is not moot because he has been unjustly arrested, as a result of which he now has a criminal record. However, a simple proceeding to remedy this exists in what is now the Criminal Division of the Common Pleas Court. [Appellant] can there present his motion to expunge the arrest from his record. This Court is not the proper body to which such a motion should be presented." *Commonwealth ex rel. Magaziner v. Magaziner*, 434 Pa. 1, 9, 253 A.2d 263, 268 (1969). We distinguished *Magaziner* in *Commonwealth v. Zimmerman*, 215 Pa.Super. 534, 258 A.2d 695 (1969), because Zimmerman was attempting to have the record of a valid criminal conviction expunged. In dictum, however, we implied that an accused who is acquitted has a right to have his record expunged: "We are compelled to agree with the Commonwealth. This is not a case involving a defendant acquitted of a crime whose conduct since that acquittal furnishes no basis for keeping the arrest record alive. Unlike the circumstances in *Commonwealth ex rel. Magaziner v. Magaziner*, [supra], the petitioner in this case has been convicted of the crime and the only way that the record of conviction can be erased is by a Governor's exercise of his power to grant clemency . . . ." 215 Pa.Super. at 536, 258 A.2d at 696. Finally, again without discussing

the basis of that right, we recently stated that "[t]he clear weight of authority holds that one who has been falsely or illegally arrested is entitled to expungement of his record and removal of his fingerprints from criminal files. . . ." *Commonwealth v. Fredericks*, 235 Pa. Super. 78, 340 A.2d 498, 505 (1975). No motion for expungement was made in *Fredericks;* failure to do so constituted a waiver of the appellant's right to object to subsequent use of unlawfully procured fingerprint-evidence.

■ It seems clear, therefore, that our appellate courts recognize the right of an accused to seek expungement of an arrest record. Cf. *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938 (1973). Although our research does not indicate a stated legal basis for that right in our appellate decisions, we believe that such a right is an adjunct to due process.[6] The harm ancillary to an arrest record is obvious: "Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by

6. Appellant argues that his right to expungement is within the ambit of his constitutional right of privacy. We find the analysis suggested by appellant more unwieldly and amorphous than traditional due process analysis. Cf. *Utz v. Cullinane*, 172 U.S.App.D. C. 67, 520 F.2d 467 (1975), in which the Court held that expungement was inherent in judicial authority to grant appropriate relief.

prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender." *Menard v. Mitchell*, 139 U.S.App.D.C. 113, 430 F.2d 486, 490–91 (1970). See also, *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Cf. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Thus, it is not hyperbole to suggest that one who is falsely accused is subject to punishment despite his innocence. Punishment of the innocent is the clearest denial of life, liberty and property without due process of law. To remedy such a situation, an individual must be afforded a hearing to present his claim that he is entitled to an expungement —that is, because an innocent individual has a right to be free from unwarranted punishment, a court has the authority to remedy the denial of that right by ordering expungement of the arrest record.[7]

Once it is concluded that a court *may* order expungement, it must be decided under what circumstances that authority is properly exercised.

■ The Commonwealth argues that society's interest in maintaining arrest records outweighs the limited intrusion on the individual's rights. We recognize the legitimate interest of society in retention of arrest records. However, recognition of that right in competition with

---

7. Thus, it appears that the court below looked to the wrong Latin maxim; this case is controlled by the maxim "ubi jus, ibi remedium", rather than "expressio unius est exclusio alterius". For an excellent discussion of the concept of "ubi jus, ibi remedium" see McMahon and Rodos, *Judicial Implication of Private Causes of Action: Reappraisal and Retrenchment*, 80 Dick.L.Rev. 167 (1976).

The conclusion that an accused is entitled to petition the court for expungement is buttressed by the current trend reflected in Philadelphia rules relating to A.R.D. See General Court Regulation 73–14, as amended March 18, 1974, Rule 440; Gen.Ct.Reg. 74–2, Rule 442. It would certainly be anomalous to allow the record of a person in A.R.D., whose case may already have gone to the grand jury, see Pa.R.Crim.P. 176, to have his record expunged while an accused is denied that right if the Commonwealth cannot even prove a prima facie case at the preliminary hearing.

the individual's rights is properly the beginning of the court's inquiry: "What is . . . required is a more delicate balancing of law enforcement needs against the privacy and other interests of affected individuals, and a closer analysis of whether legitimate law enforcement needs may be served in a manner which does not unduly trench upon the individual's rights." *Utz v. Cullinane,* 172 U.S.App.D.C. 67, 520 F.2d 467, 475, n. 10 (1975). In some instances, retention of an arrest record is clearly invalid: "Many individuals have unjustly acquired arrest records without even the excuse of an honest and unavoidable mistake by the police. In the District of Columbia alone, literally thousands of persons were once arrested 'for investigation' and then released; but their records often remain. Dragnet arrests are at best matters of recent memory. Even worse are those occasions, far more common than we would like to think, where invocation of the criminal process is used—often with no hope of ultimate conviction—as punitive sanction. Hippies and civil rights workers have been harassed and literally driven from their homes by repeated and unlawful arrests, often made under statutes unconstitutional on their face. Innocent bystanders may be swept up in mass arrests made to clear the streets either during a riot or during lawful political demonstrations." *Menard v. Mitchell,* supra at 493–94. (footnotes omitted). See also, *Wheeler v. Goodman,* 298 F.Supp. 935 (W.D.N.C. 1969); *Hughes v. Rizzo,* 282 F.Supp. 881 (E.D.Pa.1968); *Trilling v. United States,* 104 U.S.App.D.C. 159, 260 F.2d 677 (1958). In other instances, the court must balance the competing interests involved and resolve each case on its own facts. *United States v. Linn,* 513 F.2d 925 (10th Cir. 1975). Given the substantial interest of an accused in his good name and in freedom from the disability flowing from an arrest record, we believe that the Commonwealth must come forward with compelling evidence to justify retention of such information.

■ Despite the rhetoric of both briefs, the issue in the instant case is not whether all individuals who are acquitted at trial or who are exonerated at the preliminary hearing stage are entitled to expungement; nor is the question whether the appellant is presently entitled to expungement.[8] Rather, the appellant was denied a hearing on the issue of his right to expungement because the court believed that it was without authority to grant the requested relief. As discussed, supra, we believe that such a right exists under the appropriate circumstances.[9] We, therefore, remand the case for a hearing.

VAN der VOORT, J., files a dissenting opinion in which JACOBS and PRICE, JJ., join.

VAN der VOORT, Judge( dissenting) :

The appellant, Thomas Malone, appeals from the denial of his petition for expungement of his arrest record, fol-

8. Of course, the Commonwealth would be free to argue that less drastic remedies than expungement are available to protect appellant's interest while preserving the state's interest in retaining the record. See, e. g., *United States v. Rosen,* 343 F.Supp. 804 (S.D.N.Y.1972), suggesting that an injunction against dissemination might be sufficient to protect the petitioner's interest. See also, *Gregory v. Litton Systems, Inc.,* 316 F.Supp. 401 (C.D.Cal. 1970), modified on other grounds & aff'd as modified 472 F.2d 631 (9th Cir. 1972), which raises serious questions concerning the dissemination of information that contains no evidence of guilt under Title VII of the Civil Rights Act of 1964.

At the same time, the Commonwealth will carry a heavy burden in the instant case. Charges against appellant were dismissed at the preliminary hearing; that is, the Commonwealth's evidence was (apparently, for it does not appear in the record) so insubstantial that it did not make out a prima facie case. Appellant has not even had the limited protection of a finding of probable cause by a grand jury; nor has the Commonwealth produced sufficient credible evidence to reach a jury.

9. On the record as it exists, we cannot express a view on the propriety of expungement. No hearing was held and it does not appear in the record why charges were dismissed at the preliminary hearing. For example, if it appeared that the charges were dismissed for reasons unrelated to guilt or innocence, the Commonwealth may have substantial interest in retaining its records. On the other hand, if, for example, the testimony of the complainant was so insubstantial so that the Commonwealth could not even make out a prima facie case, its interest would seem relatively insignificant by comparison to the appellant's interest.

lowing the dismissal of charges against him at the preliminary hearing. This appeal raises interesting and thought-provoking arguments concerning whether a right of expungement, as a general principle, exists in the courts of our Commonwealth.[1] We are assisted in our consideration of this issue, which appears to be a question of first impression in the appellate courts of Pennsylvania, by excellent briefs and well developed arguments by the appellant and the Commonwealth.

The appellant seeks to have our Court order the lower court to grant him a hearing on his expungement request. As his brief relates, he hopes to show, at such hearing, that denial of the petition will cause serious harm to and stigmatize petitioner. Moreover, he contends that the denial of expungement will operate to cause a violation of his rights to privacy, allegedly in violation of the First and Fourteenth Amendments to the United States Constitution and Article One of the Pennsylvania Constitution. After a thorough review of all of the arguments raised and consideration of the cases, statutes and constitutional provisions cited, I must respectfully dissent from the holding of the majority of our Court that the lower court committed error in denying expungement in the instant case. My conclusion is based upon my interpretation of clear legislative intent with respect to the subject of criminal records and a conclusion that there has been no infringement of any constitutionally granted right in the circumstances of the instant case.

In the analysis of this issue, it is useful to examine the legal basis for the record-keeping functions performed by various law enforcement authorities.[2] The Act of April

1. In certain limited circumstances, as will be discussed *infra* in this opinion, there has been legislation establishing the right of expungement in certain limited contexts.

2. Specifically, the appellant, in his petition, sought the Court's Order to direct the Chief of Police in Harrisburg and the Commissioner of the Pennsylvania State Police to expunge all finger-

27, 1927, P.L. 414, § 1 *et seq.*, 19 P.S. § 1401 *et seq.*, as amended, provides *inter alia* that the State Police and other law enforcement and corrections personnel, including district attorneys and all police officers of all political subdivisions shall have the authority to take fingerprints and photographs of any person "charged with the commission of crime". All such records and "other information as may be pertinent" are to be filed for record by the State Police. Local authorities are to send any such records daily to the State Police and all police agencies are commanded to participate in the effort to establish a system for criminal investigation. Appellant does not challenge such legislative mandate and the need and value of such an identification system to our law enforcement agencies in efforts to combat crime in our Commonwealth cannot be reasonably contested. The Act further orders our Pennsylvania State Police to cooperate with police agencies of our sister states and the United States to exchange records and to participate in a complete interstate, national and even international system of criminal investigation and identification. The federal enabling statute, 28 U.S.C. § 534, provides that the United States Attorney General, or his designee (in actuality the Federal Bureau of Investigation) will perform such criminal record-keeping functions.

In addition to the provisions of the Act of April 27, 1927, briefly outlined above, other sections are particularly germane to the issue of expungement. For instance, Section 6 (19 P.S. § 1406) provides, in pertinent part:

"Any person who removes, destroys, or mutilates any of the records of the Pennsylvania State Police, or of any district attorney, shall be guilty of a misdemeanor, and such person shall, upon conviction there-

prints, photographs, photographic plates, and records of the arrest from their files, and further to have them request the return of all information and records furnished to the Federal Bureau of Investigation.

of, be punished by a fine not exceeding one hundred dollars, or by imprisonment in the county jail for a period of not exceeding one year, or by both, in the discretion of the court."

This proviso for criminal sanctions upon the elimination of identification records evidences an unqualified additional legislative intent that such records be preserved and not expunged. Another section of the Act is even more indicative of the legislature's consideration of expungement. Section 5(c) of the Act (19 P.S. § 1405(c) ) provides, in part:

"(c) The district attorneys of the several counties shall keep and arrange files of the fingerprints, taken under the provisions of this act, of persons convicted of crime and shall destroy the fingerprints of all persons acquitted."

Significantly the legislation does not extend its mandate for destruction of records of those acquitted of criminal charges to any authority other than the district attorney nor to any record other than fingerprints in the possession of the said district attorney. It is highly significant that the legislature made provisions in the same Act which not only permit, but command the collection and retention of identification records of those accused of crime, and which direct the destruction of only one type of such records by one record-keeping agency upon acquittal, and makes further provision that the destruction of all other such records would be clearly prohibited, even to the point of criminal sanctions against one who would ignore such prohibition.

Although the Act of April 27, 1927 gives a clear and unmistakable signal of legislative intent on the subject of expungement, review and interpretation is facilitated by other legislative action. Quite recently, the Child Protective Services Law became effective in our Commonwealth. Act of November 26, 1975, P.L. 438, No. 124, § 1 et seq., 11 P.S. § 2201 et seq. This statute, which pro-

vides for substantial record keeping by public authorities in attempts to curb child abuse, provides explicitly for expungement of records of certain child abuse cases (such as unfounded accusations of abuse) in certain well-defined circumstances. See Act of November 26, 1975, P.L. 438, No. 124, § 14, 11 P.S. § 2214. Another piece of relatively recent legislation, The Controlled Substance, Drug, Device and Cosmetic Act (Act of April 14, 1972, P.L. 233, No. 64, § 1 *et seq.*, 35 P.S. § 780–101 *et seq.*, eff. June 14, 1972) also contains explicit provisos for expungement, in limited circumstances, of criminal records resulting from prosecutions under that Act which have been withdrawn or dismissed or resulted in acquittals. See Act of April 14, 1972, P.L. 233, No. 64, § 19, as amended, 35 P.S. § 780–119, as amended. Clearly, the legislature has not ignored the subject of expungement of criminal records in cases of nonconviction. It is highly significant that our statutory law permits or even commands, expungement of records resulting from criminal charges in certain well-defined and explicitly limited circumstances, yet provides criminal penalties for destruction or removal of similar records in all other cases. The legislative intent could not be more clear.

My colleagues on the majority feel that the appellant is entitled to a hearing before the lower court to enable him to present his arguments in support of his right to expungement. The lower court held that it has no authority to order expungement, and I am compelled, by my interpretation of legislative intent to agree. Not only has the legislature dealt with the subject of expungement of criminal identification records in our Commonwealth, but it has fashioned very careful guidelines and declared clearly limited circumstances wherein expungement is to be permitted. Moreover, no convincing reason has been advanced to indicate that such guidelines violate the constitutional right of any person.

I am mindful that expungement requests have been granted by our trial courts on many occasions in the

past. For the first time in the instant case, however, we are squarely faced with the question of whether a lower court commits error in denying an expungement request. No matter what personal thoughts may be upon the subject of expungement in general, I feel constrained to reach this result, on this question of first impression, by my interpretation of absolutely clear legislative intent. See *Scott Township Appeal,* 388 Pa. 539, 543, 130 A.2d 695, 698 (1957). There is certainly a body of well reasoned thought favoring the broader establishment of expungement principles in the laws of our country. See Comment: "Arrest Records—Protecting the Innocent", 48 Tul.L.Rev. 629 (1974) ; "Retention and Dissemination of Arrest Records: Judicial Response", 38 U.Chi.L.Rev. 850 (1971) ; Hess and LePoole, "Abuse of the Record of Arrest Not Leading to Conviction", 13 Crime and Delinquency 494 (1967). Perhaps, if the legislature examined this issue anew, fresh guidelines might be enacted in our laws to permit expungements in our Commonwealth in cases like the instant one. I cannot agree however that such right is presently existent and I therefore dissent.

JACOBS and PRICE, JJ., join in this dissenting opinion.