456 A.2d 194

**COMMONWEALTH of Pennsylvania**

v.

**Henry MAGDON, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 17, 1981.

Filed Feb. 4, 1983.

Frank J. Muraca, Scranton, for appellant.

Ernest D. Preate, Jr., District Attorney, Scranton, for Commonwealth, appellee.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

CERCONE, President Judge:

█ This appeal presents us with the question of whether an individual who was arrested and convicted of a crime may be granted expungement of his conviction records. Consistent with established precedent, we hold today that there is no authority for granting this form of relief to an individual convicted of a crime.

On September 29, 1972, appellant pleaded guilty to a charge of selling marijuana in violation of the Controlled Substance, Drug, Device and Cosmetic Act. Act of April 14, 1972, P.L. 233, No. 64 § 13, 35 P.S. § 780–113 (1977). He was sentenced by the Court of Common Pleas of Lackawanna County to a term of eighteen months imprisonment

in the Lackawanna County Prison. After serving three months of the sentence, appellant was released on parole. Appellant complied with all of the conditions of his parole and was completely discharged on September 9, 1974.

On October 10, 1980, appellant filed a petition in the lower court to expunge his criminal record. The Commonwealth opposed the petition and filed an answer in which it stipulated as follows concerning appellant: (1) appellant is 30 years of age; (2) resides with his wife and three minor children, all of whom he solely supports; (3) is a graduate of Scranton Central High School via an external adult education degree program; (4) is a May, 1981, honors graduate of the University of Scranton, with a double major in Psychology and Human Services; (5) has been gainfully employed since 1972, and employed since 1975 by the Community Medical Center of Scranton, Pennsylvania as a Mental Health Therapist; (6) has served as an in-service instructor and a certified C.P.R. instructor at the Hospital; (7) has been a volunteer donor to the Community Medical Center Blood Bank and a member of the Lackawanna County Chapter of the American Red Cross; (8) has not been arrested or convicted of a criminal offense since his conviction in 1972; (9) is of good character and reputation, as evidenced by the testimony of co-workers, friends, neighbors, relatives, and even the arresting Police Chief of the Borough of Throop, Pennsylvania; (10) has applied for numerous jobs since his conviction and has been told approximately 15 times by the employers that the disclosure of his criminal record was the cause of his rejection for said jobs; and, (11) would enter the program for certification as a Physician's Assistant at the Hahnemann Medical Hospital of Philadelphia, Pennsylvania if his petition to expunge is granted. It is the Commonwealth's position that this Court is without authority to expunge a conviction record regardless of the subsequent progress and rehabilitation of the petitioner. We agree.

In *Commonwealth v. Malone,* 244 Pa.Superior Ct. 62, 366 A.2d 584 (1976) this Court held for the first time that upon

petition and hearing an accused's record can be expunged if the evidence at the hearing justifies the expungement. The Court first concluded that it enjoyed authority to order the expungement of an arrest record, and next determined the circumstances under which expungement is proper. In deciding this first point, the Court in *Malone* stated its rationale as follows:

It seems clear, therefore that our appellate courts recognize the right of an accused to seek expungement of an arrest record. Cf. *Sullivan v. Murphy*, 156 U.S.App. D.C. 28, 478 F.2d 938 (1973). Although our research does not indicate a stated legal basis for that right in our appellate decisions, we believe that such a right is an adjunct to due process. The harm ancillary to an arrest record is obvious: "Information denominated a record of arrest, if it becomes known, may subject an individual to serious difficulties. Even if no direct economic loss is involved, the injury to an individual's reputation may be substantial. Economic losses themselves may be both direct and serious. Opportunities for schooling, employment, or professional licenses may be restricted or non-existent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved. An arrest record may be used by the police in determining whether subsequently to arrest the individual concerned, or whether to exercise their discretion to bring formal charges against an individual already arrested. Arrest records have been used in deciding whether to allow a defendant to present his story without impeachment by prior convictions, and as a basis for denying release prior to trial or an appeal; or they may be considered by a judge in determining the sentence to be given a convicted offender." *Menard v. Mitchell*, 139 U.S.App.D.C. 113, 430 F.2d 486, 490–91 (1970). See also, *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Cf. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Thus, it is not hyperbole to suggest to punishment despite his innocence. Punishment of the innocent is the clearest

denial of life, liberty and property without due process of law. To remedy such a situation, an individual must be afforded a hearing to present his claim that he is entitled to an expungement—that is, because an innocent individual has a right to be free from unwarranted punishment, a court has the authority to remedy the denial of that right by ordering expungement of the arrest record.

*Id.,* 244 Pa.Superior at 69, 366 A.2d at 587–88.

Once the Court determined that expungement of an arrest record *may* be ordered, it went on to articulate a balancing test to be applied in determining what circumstances the *exercise* of that authority is warranted. The Court in *Malone* noted that the balancing of societal interests in the retention of arrest records with the rights of the individual was the salient point of inquiry:

What is ... required is a more delicate balancing of law enforcement needs against the privacy and other interests of affected individuals, and a closer analysis of whether legitimate law enforcement needs may be served in a manner which does not unduly trench upon the individual's rights. Id., 244 Pa.Superior at 70, 366 A.2d at 588, *quoting Utz v. Cullinane,* 172 U.S.App.D.C. 67, 520 F.2d 467, 475 n. 10 (1975).

In *Commonwealth v. Iacino,* 270 Pa.Superior Ct. 350, 411 A.2d 754 (1979) (Spaeth, J. concurring) our Court listed several factors that should be considered in determining the respective strengths of the Commonwealth's and petitioner's interests in an expungement case:

These [factors] include the strength of the Commonwealth's case against the petitioner, the reasons the Commonwealth gives for wishing to retain the records, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the petitioner may endure should expunction be denied.

*Id.,* 270 Pa.Superior at 358, 411 A.2d at 759.

In *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981), our Supreme Court noted that this list of factors was not necessarily exclusive nor exhaustive, that other factors may require examination in particular cases. Moreover,

"If the Commonwealth does not bear its burden of proof [of the petitioner's guilt] beyond a reasonable doubt ... or admits that it is *unable* to bear its burden of proof ..., the Commonwealth must bear the burden of justifying [by compelling evidence] why the arrest record should not be expunged." *Commonwealth v. Blaiklock,* 291 Pa.Superior Ct. 497, 500, 436 A.2d 226, 227 (1981), *quoting Commonwealth v. Wexler, supra,* 494 Pa. at 331, 431 A.2d at 880 (emphasis in original). *See also Commonwealth v. Briley,* 278 Pa.Superior Ct. 363, 368, 420 A.2d 582, 585 (1980); *Commonwealth v. Rose,* 263 Pa.Superior Ct. 349, 352, 397 A.2d 1243, 1244 (1979); Ober, *Expungement of Criminal Arrest Records: The State of the Law in Pennsylvania,* 83 Dick.L.Rev. 425, 433 (1978).

Instantly, appellant refers to this balancing test and cites the above-stipulated facts which he alleges tip the scales in his favor. Despite the strength and number of uncontroverted facts which appellant asserts in support of his contention that he is a worthy candidate for expungement, we are unable to examine his record since we cannot erase the stigma of his conviction.

We commend appellant for his post-conviction accomplishments and express dismay concerning his inability to obtain desired employment. However, it is readily apparent from the above quoted passage in *Malone* that Judge Hoffman's rationale for allowing expungement of an *arrest* record was based upon the due process rights of the accused. This due process right to be heard is not abridged by denying an expungement hearing to one *actually convicted* of a crime because the conviction itself is based upon a hearing in which the accused was adjudged guilty beyond a reasonable doubt, or upon a plea of guilty which waives the many of the formalities of such a hearing. The convict's trial provided a forum in which he or she enjoyed an

opportunity to be heard. No further opportunity for a hearing is required by the due process guarantee.

This decision is consistent with our disposition of an identical problem in *Commonwealth v. Zimmerman*, 215 Pa.Superior Ct. 534, 258 A.2d 695 (1969). In that case we ruled that an individual, convicted of tax offenses in a bench trial and subsequently sentenced to a one year term of probation, was not entitled to expungement of his conviction record since a record of conviction is capable of erasure only through a Governor's exercise of his power to grant clemency under Article IV, Section 9 of the Pennsylvania Constitution. *Id.*, 215 Pa.Superior at 536, 258 A.2d at 696.[1] We reasoned that

> [i]t is logical and reasonable that where there is a conviction all steps and evidence leading to that conviction should remain of record. Section 1 of the Act of April 27, 1927, P.L. 414, as amended, 19 P.S. Sec. 1401, provides: "From and after the passage of this act, the Pennsylvania State Police shall continue to procure and file for record photographs, pictures, descriptions, fingerprints, and such other information as may be pertinent, of all persons who have been, or may hereafter be, convicted of crime within this Commonwealth ..." *Id.*

As a result, we concluded in *Zimmerman* that the lower court, in ordering the destruction of the petitioner's criminal record, countermanded the legislative directive to the State Police that such record remain intact under circumstances where it enjoyed no authority to do so.

Appellant's brief cites this Court to recent cases in this Commonwealth which have allowed expungement of records where there has been some special type of "adjudication" after affording the defendant a hearing or an opportunity for one. In *Commonwealth v. Wexler, supra,* the Pennsylvania Supreme Court held that a juvenile who entered into a consent decree pursuant to the Juvenile Act was entitled to have her arrest records expunged after the

---

1. *See* also *Commonwealth v. Malone,* 244 Pa.Superior Ct. 62, 366 A.2d 584 (1976).

decree expires which usually occurs after a six month period. Similarly, in *Commonwealth v. Armstrong*, 495 Pa. 506, 434 A.2d 1205 (1981), the Supreme Court held that a person who successfully completed an Accelerated Rehabilitative Disposition (ARD) program was entitled to have his or her record of arrest expunged. It is readily apparent that these cases involve special programs with specific rehabilitative goals. These programs were set up by the legislature as vehicles in which certain individuals could avoid the stigma of an arrest record "which hangs like the sword of Damocles over one's life." *Chase v. King*, 267 Pa.Superior Ct. 498, 503, 406 A.2d 1388, 1389 (1979) (Hoffman, J., concurring). Thus, the Supreme Court in *Wexler* and *Armstrong* has expressly held that which was necessarily implied from those legislative programs: The special rehabilitative policies which underlie this Commonwealth's A.R.D. and Juvenile Consent Decree programs require that an individual be entitled to expungement of his or her records after successfully completing the program. While placement in an ARD program is not equivalent to a jury's acquittal, in practical effect it is not vastly different since the Commonwealth is forever barred from pursuing the defendant on the charges lodged against him upon his successful completion of the program.[2]

Obviously, the *Wexler* and *Armstrong* situations are distinguishable from the case before us today. Appellant herein pleaded guilty and on that basis was adjudged guilty by our Court of Common Pleas. His convictions necessarily preclude him from affirmatively establishing nonculpability in an expungement hearing. As a result, such a proceeding would constitute a waste of judicial resources. Moreover, there is no special legislative policy which helps appellant such as those existing in *Wexler* and *Armstrong*. In fact, our Uniform Controlled Substance, Drug, Device, & Cosmetic Act, 35 Pa.S. § 780–119(a) provides for expungement, as of right, of any records of arrest or prosecution for a

---

**2.** *See Commonwealth v. Briley*, 278 Pa.Superior Ct. 363, 420 A.2d 582 (1980).

criminal offense arising under the Act when the charges are withdrawn, dismissed or result in an acquittal. Appellant is not entitled to expungement as of right under this section of the Act because he was not acquitted and the charges were not withdrawn or dismissed. Thus, appellant could not proceed under the Act, but, however, chose to invoke the protection of due process rights as set forth in those areas we have discussed pertaining to expungement cases. Appellant's due process rights were not infringed and appellant is, therefore, not entitled to expungement of his record. Accordingly, the lower court did not err in denying appellant's petition. Indeed, it had no authority to do otherwise in view of our holding in *Zimmerman, supra.* An application for the relief sought by appellant should properly be addressed to the Board of Pardons.

Order affirmed.