458

581 A.2d 221

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**G.C., Appellant.**

Superior Court of Pennsylvania.

Submitted June 25, 1990.

Filed Oct. 17, 1990.

G.C., pro se.

H. Stanley Rebert, Asst. Dist. Atty., York, for Com., appellee.

Before CIRILLO, President Judge, and POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from an order entered in the Court of Common Pleas of York County denying the appellant G.C.'s motion to expunge his arrest record. We vacate the trial court's order and remand this case for a hearing on the issue.

The record indicates that in January, 1989, G.C. and his family moved from Maryland to Pittsburgh. G.C. rented a U–Haul van from Hanover Self Storage [1] for the purpose of transporting furniture, along with other items, to the new residence. G.C. experienced problems with the U–Haul vans.[2] As a result, he ordered his bank to stop payment on the checks issued for the rentals. Thereafter, G.C. wrote a letter to the U–Haul corporation expressing his dissatisfaction with the vans. Following negotiations with U–Haul, G.C. paid $440.00 to the company.[3] On February 13, 1989, G.C. was charged under 18 Pa.C.S. § 3926 for theft of services. He was subsequently arrested, incarcerated, and later released on bail. No preliminary hearing was held.[4]

On August 24, 1989, G.C., through his counsel, filed a motion for settlement pursuant to Pa.R.Crim.P. 314.[5] G.C.

1. Hanover Self Storage is located in Hanover, Pennsylvania.

2. It appears that G.C. rented two U–Haul vans. The first van was rented for the round-trip from Hanover to Pittsburgh. The second van was used during a one-way trip to Pittsburgh.

3. G.C. stopped payment on three checks totalling $697.04 with an additional bank fee of $7.50, creating a total loss to U–Haul of $704.54.

4. G.C. also waived his arraignment and pleaded not guilty to the charges.

5. Pa.R.Crim.P. 314 provides:
   When a defendant is charged with an offense which is not alleged to have been committed by force or violence or threat thereof, the court may order the case to be dismissed upon motion and a showing that:
   (a) the public interest will not be adversely affected; and
   (b) the attorney for the Commonwealth consents to the dismissal; and
   (c) satisfaction has been made to the aggrieved person or there is an agreement that satisfaction will be made to the aggrieved person; and
   (d) there is an agreement as to who shall pay the costs.

asserted that "restitution ha[d] been made for all amounts allegedly owed to the U–Haul franchise."[6] Further, he stated that the court costs would be paid and that "[t]he District Attorney ha[d] no objection to this request." *See* Motion for Settlement pursuant to Rule 314 of the P.R.C.P. [sic]. By Order dated August 24, 1989, the trial court, "finding that the interests of justice [had] been served," dismissed the charges pending against G.C.

On September 11, 1989, G.C., pro se, moved to expunge his arrest record. On October 5, 1989, the trial court entered an order denying G.C.'s request. This appeal followed.

G.C. asks this Court to expunge his arrest record. Specifically, he raises four issues on appeal.[7] They are as follows.

1. Did the trial court's denial of appellant's expungement motion constitute denial of appellant's due process rights?

2. Did the trial court err in denying appellant's expungement motion, following a Pa.R.Crim.P. 314 dismissal, because Rule 314 doesn't specifically provide for expungement?

3. Did the trial court's denial of appellant's expungement motion, allowing the continued maintenance and dissemination of the underlying case arrest records, constitute denial of his constitutional rights of privacy and protection of reputation?

4. Did the trial court abuse its discretion in denying appellant's motion for expungement of arrest records?

6. The circumstances surrounding the restitution are not fully apparent in this case. However, we note that in addition to the $440.00 that G.C. paid to U–Haul, G.C. received a letter of apology from U–Haul's customer service department which includes the paragraph, "I am enclosing a check which reflects a 50% adjustment off of the trucks [sic] base rental rate due to the difficulties you did have with the truck." *See* Letter, dated April 7, 1989, at R. 14a. The letter was attached to G.C.'s brief but was not made an official part of the record.

7. The Commonwealth has chosen not to file a brief in this matter. Instead, it relies on the trial court's opinion which was entered pursuant to Pa.R.A.P. 1925(a).

The trial court's memorandum opinion in this case reads, in pertinent part:

This action was before the Court on information filed with the Clerk of Courts of York County, Pennsylvania on March 17, 1989, charging the defendant with Theft of Services. On August 24, 1989, that Court entered an Order dismissing the charges in response to a Motion filed by defendant under Pa.R.Crim.P. 314. While this Rule provides for the dismissal of offenses when the provision of the Rules are met, it does not, as does Pa.R.Crim.P. 186 with reference to matters under the Accelerated Rehabilitative Disposition Section, provide for the expungement of the arrest record. The determination of expungement is therefore within the discretion of the Court. Having examined the record, the Court found no reason to expunge the record in this case, and therefore, refused the motion.

Trial Court opinion, at 1–2.

The law relative to the issue of expungement was discussed by this Court in *Commonwealth v. Malone*, 244 Pa.Super. 62, 366 A.2d 584 (1976). In *Malone*, the court was faced with an issue of first impression in this jurisdiction: "whether an accused is entitled to a hearing to determine whether he has a right to expungement of his arrest record after the charges are dismissed at the preliminary hearing." *Id.*, 244 Pa.Superior Ct. at 64, 366 A.2d at 585. In recognizing an accused's right to seek expungement of an arrest record, this Court stated that "such a right is an adjunct to due process." *Id.* The court reasoned that the existence of an arrest record may subject an accused to difficulties both in his/her professional and personal life. Among other things, "[o]pportunities for schooling, employment, or professional licenses may be restricted or non-existent as a consequence of the mere fact of an arrest, even if followed by acquittal or complete exoneration of the charges involved." *Id.*, 244 Pa.Superior Ct. at 68, 366 A.2d at 588. It concluded that

[t]hus, it is not hyperbole to suggest that one who is falsely accused is subject to punishment despite his inno-

cence.  Punishment of the innocent is the clearest denial of life, liberty and property without due process of law. To remedy such a situation, an individual must be afforded a hearing to present his claim that he is entitled to an expungement—that is, because an innocent individual has a right to be free from unwarranted punishment, a court has the authority to remedy the denial of that right by ordering expungement of the arrest record [footnote omitted].

*Id.,* 244 Pa.Superior Ct. at 69, 366 A.2d at 588.  The court next addressed under what circumstances expungement may be ordered.  In suggesting a balancing test (weighing society's interest in maintaining arrest records against the inherent intrusion on the individual's rights resulting from the retention of an arrest record), this Court held: "[g]iven the substantial interest of an accused in his good name and in freedom from the disability flowing from an arrest record, we believe that the Commonwealth must come forward with compelling evidence to justify retention of such information." *Id.,* 244 Pa.Superior Ct. at 70, 366 A.2d at 589.  *See also Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981) (accord); *Commonwealth v. Blaiklock,* 291 Pa.Super. 497, 436 A.2d 226 (1981) (discusses factors to be considered by the court in balancing the state's interests against those of the individual).

Subsequent cases attempted to modify the rule in *Malone.*  In *Commonwealth v. Rose,* 263 Pa.Super. 349, 397 A.2d 1243 (1979), this Court held that "expunction is proper only in cases where acquittal is consistent with a finding a [sic] innocence and is not a result of legal technicalities unrelated to questions of guilt or innocence." *Id.,* 263 Pa.Superior Ct. at 351, 397 A.2d at 1244.  In *Commonwealth v. Iacino,* 270 Pa.Super. 350, 411 A.2d 754 (1979), this Court noted:

Recently, we have further held that expunction is proper only where acquittal is consistent with a finding of real innocence and is not the result of legal technicalities unrelated to questions of guilt or innocence. *Commonwealth v. Rose,* [263 Pa.Super. 349, 397 A.2d 1243 (1979) ].

Furthermore, in *Commonwealth v. Mueller*, 258 Pa.Super. 219, 392 A.2d 763 (1978), we held that once a prima facie case had been proven by the Commonwealth, the accused had the burden of affirmatively demonstrating nonculpability. Upon such a showing, the court should then weigh the Commonwealth's interest in retaining the record against the accused's interest in being free of whatever disabilities were caused by the criminal record.

*Id.* 270 Pa.Super. at 354–55, 411 A.2d at 757. We clarify that in *Mueller*, a case which is analogous to G.C.'s instant appeal, the burden was on the defendant to show affirmatively his nonculpability because the charges were dismissed as a result of Rule 1100 violation, not because the defendant was adjudicated not guilty. In *Mueller*, the magistrate found that the Commonwealth had presented a prima facie case and held the defendant for court. Due to the Commonwealth's subsequent non-prosecution, the defendant's petition to dismiss under Rule 1100 was granted. The defendant later filed a petition to expunge his criminal record. This Court reviewed the *Malone* decision, but held:

Our allocation of the burden upon the Commonwealth was based on the failure of the Commonwealth to make out a prima facie case at Malone's preliminary hearing. Here, the Commonwealth met that burden, and the prosecution was terminated for reasons unrelated to guilt or innocence. In situations such as this, the applicable rule is that enunciated in *Spock v. District of Columbia*, 283 A.2d 14, 19 (D.C.App.1971). [Quotation omitted].

Accordingly, where the record shows that the Commonwealth made out a prima facie case of guilt of the part of an accused, he will then have the burden to affirmatively demonstrate non-culpability at a hearing, otherwise his petition to expunge will be denied. If, however, such a showing is made, the court must weigh the Commonwealth's interest in retaining appellee's arrest record against appellee's interest in being free from whatever disability the record may create.

464

It must be borne in mind that the question before the court is not whether expungement is desirable in this case but whether it is constitutionally required; that is, whether it is necessary in order to prevent punishment of an innocent person.

*Mueller*, 258 Pa.Super. at 222–23, 392 A.2d at 765.

Finally, in *Commonwealth v. Wexler*, 494 Pa. 325, 431 A.2d 877 (1981), the Pennsylvania Supreme Court implicitly ₋ejected the *Mueller* decision and its progeny, and held that "if the Commonwealth *does* not bear its burden of proof beyond a reasonable doubt ..., or admits that it is *unable* to bear its burden of proof ..., the Commonwealth must bear the burden of justifying why the arrest record should not be expunged." *Id.* 494 Pa. at 331, 431 A.2d at 880. As this Court noted in *Commonwealth v. Chacker*, 320 Pa.Super. 402, 467 A.2d 386 (1983), "*Wexler* created no exceptions to its holding." *Id.* 320 Pa.Super. at 410, 467 A.2d at 390. In *Chacker*, this Court stated:

We read the unequivocal language in *Wexler* to foreclose *explicitly* a hearing court from continuing to shift the burden of persuasion to the petitioner seeking expungement merely because the Commonwealth made out a *prima facie* case of guilt on the part of the petitioner. [Footnote reads, in part: "Without continuing this discussion farther, suffice it to say that *Mueller* is no longer a viable decision on the burden of proof controversy, having been overruled *sub silentio* by *Wexler*."] Thus, under *Wexler*, the burden to present compelling evidence against expungement is placed upon the Commonwealth if it has failed to establish the accused's guilt beyond a reasonable doubt (e.g., before the court of common pleas,) or the Commonwealth "admits that it is *unable* to bear its burden of proof." *Id.* Since the appellant, instantly, was not tried in the court of common pleas, we are left with the determination of whether the Commonwealth's admission that "[t]he suppression order precluded [it] from proceeding to trial," ... is equivalent to, as required by *Wexler*, an admission that it is unable to bear its

burden of proof. We think it is, *for nowhere in the Wexler opinion was a caveat created to the two specific circumstances that trigger the Commonwealth's burden of proof obligation, e.g., where the petitioner has succeeded in terminating his prosecution by "legal technicalities unrelated to questions of guilt or innocence."* In other words, it is noteworthy that *Wexler* created no exceptions to its holding.

*Id.,* 320 Pa.Superior Ct. at 409–10, 467 A.2d at 389–90. *See also Commonwealth v. Richardson,* 354 Pa.Super. 194, 511 A.2d 827 (1986) (accord); *Commonwealth v. Miller,* 325 Pa.Super. 526, 473 A.2d 193 (1984) (accord).

In the instant case, G.C. consistently asserts his innocence. More importantly, G.C. was never adjudicated guilty. The record contains evidence that restitution was made for all amounts allegedly owed to the U–Haul franchise. The record also indicates that the trial court dismissed the charges against G.C. having found that "the interests of justice [had] been served."

Moreover, there is no evidence that the Commonwealth ever demonstrated the impropriety of expungement in this case. *See Commonwealth v. Chacker,* 320 Pa.Super. 402, 467 A.2d 386 (1983). Rather, no hearing was held on the motion to expunge, and the trial court decided the motion without the benefit of compelling reasons by the Commonwealth for its denial. *Commonwealth v. Wexler,* 494 Pa. 325, 431 A.2d 877 (1981); *Commonwealth v. Richardson,* 354 Pa.Super. 194, 511 A.2d 827 (1986).[8] The trial court refused G.C.'s motion to expunge because Pa.R.Crim.P. 314 does not provide for the expungement of arrest records. We read Rule 314 as an inclusive rule, not an exclusive one. The right to request expungement exists independent of it. *See also Commonwealth v. Iacino,* 270 Pa.Super. 350, 411

---

**8.** It is still the law that once the Commonwealth enunciates its reasons to justify the retention of an arrest record, the hearing court "must weigh the individual's right to be free from the harm attendant in maintenance of the arrest record against the reasons given to support denial of the petition...." *Commonwealth v. Richardson,* 354 Pa.Super. 194, 197, 511 A.2d 827, 828 (1986).

A.2d 754 (1979) ("the right of an accused to petition for expungement is an adjunct to due process and is not dependent upon express statutory authority.").

For the foregoing reasons, we vacate the order of the trial court and remand for further proceedings consistent with this opinion.[9]

Order vacated.

Case remanded.

Jurisdiction relinquished.

---

**9.** We do not proceed to discuss the merits of G.C.'s constitutional issues as we were able to resolve this appeal on non-constitutional grounds. *Ballou v. State Ethics Commission,* 496 Pa. 127, 436 A.2d 186 (1981); *Mt. Lebanon v. County Bd. of Elections,* 470 Pa. 317, 322, 368 A.2d 648, 650 (1977).