French, J.,
dissenting.
{¶ 63} I cannot agree that Pepper Pike v. Doe, 66 Ohio St.2d 374, 421 N.E.2d 1303 (1981), supports the new judicial power announced by the majority. The majority conflates a court’s inherent power over its own records with “expungement,” a statutory remedy affecting records held by other branches of government and carrying a license to conceal information from the public. We have missed the opportunity to recognize Pepper Pike for what it was — a narrow, short-lived, judge-made “fix” to Ohio’s nascent criminal expungement statutes. Therefore, I must respectfully dissent.
Record “Expungement” and Pepper Pike
{¶ 64} “Expungement” is a legislative construct with no universally applied definition. It stems from a correctional philosophy that gained momentum in the 1950s and 1960s, when a minority of states enacted laws to allow those with juvenile-delinquency records or criminal-conviction records to avoid the social stigma attached to those records by allowing courts to order the records erased or sealed. Gough, The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status, 1966 Wash.U.L.Q. 147, 148-149 (1966). Despite their varying approaches, rationales, and terminology, expungement *146 statutes generally allowed certain offenders to apply to expunge, delete, annul, erase or seal a record of conviction or of adjudication of delinquency. Id. at 149-150.
{¶ 65} Ohio followed suit, enacting legislation allowing expungement of juvenile-adjudication records in 1969, see former R.C. 2151.358, Am.Sub.H.B. No. 320, 133 Ohio Laws, Part II, 2040, 2066, and expungement of adult-conviction records in 1974, see former R.C. 2953.32, Am.Sub.S.B. No. 5, 135 Ohio Laws, Part I, 70 (“S.B. No. 5”). In its original form, former R.C. 2953.32 authorized an adult first-time offender to apply to the sentencing court for the “expungement of the record of his conviction” after a specified period of time. Former R.C. 2953.32(A), S.B. No. 5 at 70. The statute described “expungement” as a court-ordered “seal[ing]” of official records and “deleting]” of index references pertaining to a criminal conviction. Former R.C. 2953.32(C), S.B. No. 5 at 70-71. An order of expungement restricted the purposes for which law-enforcement officers could inspect the records, restored “all rights and privileges not otherwise restored by termination of sentence or probation,” and prohibited employment applications from asking about the existence of expunged convictions. See former R.C. 2953.32(D), 2953.33(A), and 2953.33(B), S.B. No. 5 at 70-72. The General Assembly replaced the term “expungement” with “sealing” in 1979, Am.Sub.H.B. No. 105, 138 Ohio Laws, Part I, 1638; however, “expungement” remains a common colloquialism used to describe the process. See Pepper Pike at 378 (referring to R.C. 2953.32 as “Ohio’s criminal expungement statute”); State v. LaSalle, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 3, fn. 2.
{¶ 66} Some jurisdictions criticized the emerging expungement statutes because they did not also apply to persons charged with but not convicted of a crime. Several courts, concerned that arrest records may be as stigmatizing as conviction records, invoked a “narrow” power of expungement in the absence of statutory authority. United States v. Linn, 513 F.2d 925, 927 (10th Cir.1975), and cases cited therein; see also Commonwealth v. Malone, 244 Pa.Super. 62, 68, 366 A.2d 584 (1976) (noting the disabilities that may result from “the mere fact of an arrest, even if followed by acquittal or complete exoneration”). Courts reserved this “inherent equitable” power for unusual and extraordinary circumstances, such as when the arrest was intended to harass or amounted to a flagrant constitutional violation. Doe v. Webster, 606 F.2d 1226, 1230 (D.C.Cir. 1979).
{¶ 67} We followed these jurisdictions in Pepper Pike, 66 Ohio St.2d 374, 421 N.E.2d 1303. The defendant-appellant in that case, Jane Doe, had been arrested on a misdemeanor assault charge, with the complaining witness being the wife of her ex-husband. Id. at 374. The parties eventually agreed that the assault charge against Doe would be dismissed in exchange for Doe’s agreement to dismiss a defamation action against her ex-husband and his wife. Id. at 374-375. Doe then moved to expunge her arrest record in the case, but the trial court *147 denied her motion on the grounds that it lacked jurisdiction over the motion. Id. at 375. At the time, R.C. 2953.32 authorized the sealing of conviction records for certain first-time offenders, but no statute provided a comparable remedy for persons who had been found not guilty or who had had the charges against them dismissed.[1]
{¶ 68} We reversed, holding that “trial courts in Ohio have jurisdiction to order expungement and sealing of records in a criminal case where the charges are dismissed with prejudice prior to trial by the party initiating the proceedings.” Id. at paragraph one of the syllabus. Given “the inherent lack of precision in the term ‘expungement,’ ” we adopted the remedy set forth in R.C. 2953.32(C) and (F), which authorize a trial court to order sealed all official records and all index references pertaining to the case, but allow the government to retain the arrest record “in its appropriate files.” Id. at 377-378, and fn. 5. We cautioned, however, that the expungement of such records should be used only in the “exceptional case, and should not be construed to be a carte blanche for every defendant acquitted of criminal charges in Ohio courts.” Id. at 377. “When exercising this power, the court should use a balancing test which weighs the privacy interest of the defendant against the government’s legitimate need to maintain records of criminal proceedings.” Id. at paragraph two of the syllabus.
{¶ 69} The narrow remedy we recognized in Pepper Pike—i.e., expungement of arrest records in the absence of statutory authority — existed for less than three years before the General Assembly enacted R.C. 2953.51 et seq., which authorize courts to seal criminal records following an acquittal, dismissal, or no bill. Am.Sub.H.B. No. 227, 140 Ohio Laws, Part I, 2382, 2386. Pursuant to R.C. 2953.52, a trial court must, consistent with Pepper Pike, “[w]eigh the interests of the person in having the official records pertaining to the case sealed against the legitimate needs, if any, of the government to maintain those records.” R.C. 2953.52(B)(2)(d). We have described R.C. 2953.52 as an exception to the general rule of openness in the public-records context. State ex rel. Cincinnati Enquirer v. Winkler, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 10.
Pepper Pike Is Inapplicable Here
{¶ 70} Two obstacles prevent Pepper Pike from authorizing nonstatutory expungement of domestic-violence civil-protection-order (“CPO”) records. First, *148 such a power would undermine the General Assembly, which has commanded government agencies to maintain records of CPO proceedings and which has already identified who may apply to seal the records of those proceedings: juveniles. Second, Pepper Pike adopted the statutory definition of “expungement” in Ohio’s criminal expungement statutes, a definition that is unworkable in the context of CPOs.
{¶ 71} With R.C. 3113.31, the General Assembly established a civil proceeding by which a person can obtain a protection order in cases of domestic violence. The statute vests jurisdiction with the domestic-relations division (in common pleas courts with such a division) to grant an ex parte protection order upon a showing of “[immediate and present danger of domestic violence to the family or household member,” which includes situations in which the respondent has threatened the family or household member with bodily harm. R.C. 3113.31(A), (B), and (D)(1).
{¶ 72} Not only has the General Assembly created CPO proceedings, it has identified the agencies that must maintain records of such proceedings and the class of individuals who may apply to seal those records. R.C. 3113.31(F)(1) requires trial courts to issue a copy of “any protection order” to all law-enforcement agencies with jurisdiction to enforce the order, and R.C. 3113.31(F)(3) directs those law-enforcement agencies to “establish and maintain an index” for the protection orders. This “statewide enforcement, communication, indexing, and authority” is one of the distinguishing features of a domestic-violence CPO. Felton v. Felton, 79 Ohio St.3d 34, 39, 679 N.E.2d 672 (1997). As for who may apply to seal CPO records, the General Assembly has expressly afforded such relief to juveniles. In 2010, the General Assembly amended R.C. 3113.31 and the juvenile-record-sealing provisions in R.C. 2151.358 to authorize, and in some instances require, the sealing of records pertaining to CPOs issued against juveniles. 2010 Am.Sub.H.B. No. 10; R.C. 2151.358(D)(1), (D)(2), and (D)(3)(a); R.C. 3113.31(E)(9).
{¶ 73} This level of legislative attention leaves little room for the equitable remedy recognized in Pepper Pike. The maxim “equity follows the law” advises against inventing such judicial remedies where doing so would extend the scope of existing legislative remedies. Civ. Serv. Personnel Assn., Inc. v. Akron, 48 Ohio St.2d 25, 27, 356 N.E.2d 300 (1976). Moreover, “when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.” Natl. RR. Passenger Corp. v. Natl. Assn. of RR. Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). What it means to “expunge” a CPO record and who may apply for such a remedy are issues best left to the General Assembly.
*149 {¶ 74} Notably, this court has also recognized the need to preserve CPO records in our rules of superintendence. Sup.R. 26.03(G)(4) establishes specific timetables for the juvenile and domestic-relations divisions to retain case files of petitions for domestic-violence protection orders, and Sup.R. 26.03(D) requires each division to “permanently” retain the index, docket, and journal.
{¶ 75} Aside from the fact that the CPO statutes do not allow for the equitable expungement power recognized in Pepper Pike, the definition of “expungement” relied on in Pepper Pike is unworkable in the CPO context. In Pepper Pike, we followed the expungement provisions in “Ohio’s criminal expungement statute,” R.C. 2953.32(C) and (F), for the purpose of ensuring “clarity and uniformity” with the existing legislative scheme. Pepper Pike, 66 Ohio St.2d at 377-378, 421 N.E.2d 1303. That statute requires a trial court to order “all official records” of the case sealed and “all index references” pertaining to the case deleted, except as provided in subsection (F). R.C. 2953.32(C)(2). “Official records” means “all records that are possessed by any public office or agency that relate to a criminal case.” R.C. 2953.31(D) and 2953.51(D). The majority does not explain how a court can “expunge” CPO records within the meaning of Pepper Pike when in Pepper Pike we adopted a statutory definition applicable only in the context of criminal records. Instead, the majority leaves it to the lower courts to determine what is meant by the term “expungement” in the CPO context.
{¶ 76} Admittedly, the rationale in Pepper Pike was imprecise, namely, our statement that “[t]he basis for such expungement * * * is the constitutional right to privacy.” Id. at 377. But that statement does not stand for the proposition that expungement is an individual right or a judicial power guaranteed by the constitution. Although we stated that the right to privacy was the basis for exercising the expungement power in that case, we never said that it was the source of that power. In the very next sentence, we said, “[W]e follow other jurisdictions which recognize the power to grant this judicial remedy.” Id. at 377. Those jurisdictions that identified the source of a court’s expungement authority relied on the concept of “inherent equitable powers.” Webster, 606 F.2d at 1230 (cited in Pepper Pike at 376, fn. 3). Notably, the validity of the federal authority relied on in Pepper Pike has come into question based on the United States Supreme Court’s decision in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), which identified the limits of a federal district court’s inherent or ancillary authority. See United States v. Lucido, 612 F.3d 871 (6th Cir.2010) (in which the Sixth Circuit followed the First, Third, Eighth, and Ninth Circuits and abandoned the concept of an inherent expungement power). But whatever remains of its federal underpinnings, Pepper Pike did not construct a bottomless reservoir of judicial expungement power, just as it did not recognize a constitutional right to expungement. Indeed, our subsequent holdings have consistently refused to adopt this latter *150 proposition. See State v. Hamilton, 75 Ohio St.3d 636, 639, 665 N.E.2d 669 (1996) (“Neither the United States Constitution nor the Ohio Constitution endows one convicted of a crime with a substantive right to have the record of a conviction expunged”); State v. Futrall, 123 Ohio St.3d 498, 2009-Ohio-5590, 918 N.E.2d 497, ¶ 6 (“expungement is a privilege and not a right”).
Jerry H. Shade, for appellant.
{¶ 77} This is not to say that a common pleas court is powerless over its own records. We have long recognized that a court has “supervisory power and control over its docket,” State ex rel. Buck v. McCabe, 140 Ohio St. 535, 537, 45 N.E.2d 763 (1942), and “general custody of and authority over its own records and files,” Ex parte Thayer, 114 Ohio St. 194, 150 N.E. 735 (1926), paragraph one of the syllabus. See also Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (“Every court has supervisory power over its own records and files * * * ”). But appellant requests expungement, a legislatively defined remedy that encroaches on other branches of government and conceals historical fact from public view. Because the legislature has not afforded him such a remedy, the trial court was powerless to do so.
{¶ 78} If the majority is correct — if “unusual and extraordinary circumstances” can create an undefined, judicial expungement power — then what is so unusual or extraordinary about this case? While appellant’s ex-wife eventually agreed to dissolve the CPO at some point during or after the divorce proceedings, there is no evidence that she used the CPO as a “vindictive tool to harass,” as did the complainant in Pepper Pike. Id., 66 Ohio St.2d at 377, 421 N.E.2d 1303. In fact, she never retracted the allegations of domestic violence underlying the CPO petition, and her agreement with appellant’s expungement request was based on her concern for the best interests of her family. Equating every dissolved CPO with the “unusual and exceptional” circumstances discussed in Pepper Pike will undoubtedly invite litigation and confusion over two questions: (1) what other types of records can be expunged and (2) what does expungement mean in those contexts?
{¶ 79} Pepper Pike is distinguishable from this case in every way that matters. I would affirm the judgment of the court of appeals and hold that the expungement remedy recognized in Pepper Pike does not apply to domestic-violence CPO proceedings conducted in accordance with R.C. 3113.31. Therefore, I respectfully dissent.
O’Connor, C.J., and Lanzinger, J., concur in the foregoing opinion.

. There was, however, a statute permitting expungement in cases in which a misdemeanor arrest resulted in an agreed bail forfeiture, former R.C. 2953.42, Am.S.B. No. 192, 137 Ohio Laws, Part I, 460, and a statute allowing certain persons to seek the return of the fingerprint record made upon their arrest if the charges were subsequently dismissed or they were found not guilty of the charges, former R.C. 109.60, Am.S.B. No. 170, 137 Ohio Laws, Part I, 447.